IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DON ALBERT PAYNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED; AND GLORIA JEAN PAYNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED; | § § § § § § § § § | SA-19-CV-00407-FB |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| CITY OF SAN ANTONIO, TEXAS, SAN ANTONIO POLICE DEPARTMENT, WILLIAM KASBERG, SHANNON PURKISS, GERARDO MORALES, RON NIRENBERG, WILLIAM MCMANUS, MIDCROWN PAVILION APARTMENTS, SAN ANTONIO HOUSING AUTHORITY, AMY CARRILLO, | § § § § § § § § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation and Order concerns the following dispositive and nondispositive motions: San Antonio Housing Authority's Rule 12(b)(6) Motion to Dismiss [#3]; Amy V. Carrillo's Rule 12(b)(6) Motion to Dismiss [#4]; San Antonio Housing Authority and Amy V. Carrillo's Joint Rule 11 Motion for Sanctions [#5]; and Plaintiffs' Motion for Reconsideration of an Order Denying *Pro Se*'s Request for Entry of Default against MidCrowne [#38]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6]. In reviewing the

1

motions before the Court, the undersigned has also considered the following filings: Plaintiffs' Opposition to Defendants' Motions to Dismiss [#7]; Plaintiffs' Opposition to Defendants' Motion for Sanctions [#8]; Defendants' Reply in Support of Motions to Dismiss [#9]; Plaintiffs' Sur-Reply Re: Motions to Dismiss [#10]; Defendants' Reply in Support of Motion for Sanctions [#11]; Plaintiffs' Sur-Reply re: Motion for Sanctions [#12]; Defendants' Objection to Plaintiffs' Sur-Reply [#13]; Plaintiffs' More Definite Statement [#29]; and Defendant MidCrowne Senior Pavilion, LP's Response to Plaintiffs' Motion for Reconsideration of an Order Denying *Pro Se*'s Request for Entry of Default Against MidCrowne [#38]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and this order pursuant to 28 U.S.C. § 636(b)(1)(A).

By their motions, Defendants San Antonio Housing Authority and Amy Carrillo seek dismissal of all of Plaintiffs' claims for failure to state a claim upon which relief can be granted and ask the Court to sanction Plaintiffs for filing vexatious and frivolous lawsuits against them and others. Plaintiffs ask the Court to reconsider its order of September 4, 2019, in which the Court denied Plaintiffs' motion for entry of default against Defendant MidCrowne Senior Pavilion, LP.

Having reviewed Plaintiffs' pleadings in light of the arguments raised in Defendants' motions, the undersigned will recommend that the District Court **GRANT** the Motion to Dismiss filed by San Antonio Housing Authority; **GRANT IN PART** the Motion to Dismiss filed by Amy Carrillo; and **DENY** Defendants' Motion for Sanctions. The Court will also order that Plaintiffs' Motion for Reconsideration be **DENIED**.

# I.  Procedural Background

Plaintiffs, proceeding *pro se*, originally filed this lawsuit in the County Court at Law No. 3 in Bexar County, Texas on September 21, 2018.  (Case History [#1-9] at 4–9.)  While this case was still pending in state court, Plaintiffs filed their 74-page First Amended Petition, which remains the live pleading in this case.  (First Am. Pet. [#1-8] at 2–76.)

The First Amended Petition names as Defendants the City of San Antonio, Amy V. Carrillo Individually of the San Antonio Housing Authority ("SAHA"), and various officers of the San Antonio Police Department ("SAPD") in their individual capacities—Officer William Kasberg, Officer Shannon Purkiss, and Officer Gerardo Morales.  However, the Petition also mentions SAHA itself as a Defendant, as well as MidCrowne Pavilion Apartments, Mayor Ron Nirenberg, and Police Chief William McManus throughout the body of the Petition.

At the time Plaintiffs filed their Original and Amended Petitions, they had a nearly identical cause of action pending in the Justice of the Peace Court under cause number 2018-CV-06441.  The two causes of action were consolidated in state court under cause number 2018-CV-05843 on December 14, 2018.  (Order Granting Mtn. to Consolidate [#1-3] at 2.)  The City of San Antonio removed the consolidated case to this Court, but the case was remanded due to a procedural defect with the removal.  (Notice of Removal [#1-4, #1-5].)  Following remand, SAHA, which had not been served prior to the original removal and remand, waived service of process and removed this case to this court on April 17, 2019.  (Notice of Removal [#1].)  All Defendants named in the First Amended Petition have been served or have waived service.  (*Id.* at ¶¶ 5–6.)

Plaintiffs' Amended Petition alleges that they signed a lease agreement with MidCrowne Pavilion Apartments ("MidCrowne") and SAHA contractually agreed to subsidize their rent

under the Section 8 Program run by the U.S. Department of Housing and Urban Development ("HUD"). According to Plaintiffs, they satisfied every payment obligation under the lease, but were nonetheless evicted in retaliation for their request for a reasonable accommodation for a disability. It is unclear from the Petition the precise nature of the accommodation requested. Plaintiffs further allege that they were subject to an unlawful warrantless search of their apartment and seizure of a firearm after management of MidCrowne alerted SAHA to a post on Mr. Payne's Facebook page that concerned firearms and ammunition.

Plaintiffs' First Amended Petition asserts the following causes of action against the various Defendants: (1) wrongful eviction/unlawful search and seizure pursuant to Section 1983; (2) due process violation pursuant to Section 1983; (3) disability discrimination and failure to accommodate; (4) intentional infliction of emotional distress; (5) civil conspiracy pursuant to 42 U.S.C. § 1985; (6) violation of Section 1986; (7) conspiracy to violate the Deceptive Trade Practices Act; and (8) negligence.

Soon after removal, Defendants SAHA and Carrillo filed the motions to dismiss and motion for sanctions that are the subject of this report and recommendation, and MidCrowne filed a motion for a more definite statement to determine whether Plaintiffs in fact intended to name it as a Defendant in this suit. The Court held its standard Rule 16 conference with the parties, but the City of San Antonio, the SAPD, and related individual Defendants failed to appear. After the conference, the Court granted MidCrowne's motion and ordered Plaintiffs to file a more definite statement to assist MidCrowne and the Court in determining the nature of the allegations in this case. (Order [#22].) The Court also ordered Defendants City of San Antonio, the SAPD, and Municipal Defendants William Kasberg, Shannon Purkiss, Gerardo Morales, and William McManus to show cause why they should not be sanctioned for their failure to appear at

the initial pretrial conference.  (*Id.*)  Plaintiffs thereafter moved for default against the City of San Antonio and the individual Municipal Defendants, as well as Midcrowne, SAHA, and Carrillo.  The Court denied the motions and ordered MidCrowne to file a responsive pleading, ordered the City of San Antonio and the Municipal Defendants to file an amended responsive pleading (as they had filed an answer in state court), and reminded Plaintiffs that SAHA and Carrillo had responded to Plaintiffs' Petition by filing their motions to dismiss.  (Order [#31].) MidCrowne and the City of San Antonio and the Municipal Defendants timely filed their answers as ordered.  (Response [#34]; Corrected Answer [#36].)  Plaintiffs then filed their motion for reconsideration of the Court's order denying the entry of default against MidCrowne, which remains pending before the Court.  That motion as well as the motions to dismiss and for sanctions filed by SAHA and Carrillo are ripe for this Court's review.

## II.  Motions to Dismiss

The Court should grant the Motion to Dismiss filed by SAHA and grant in part the Motion to Dismiss filed by Carrillo.

### A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded

must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

## B. Facts Alleged Against SAHA and Carrillo

Plaintiffs' First Amended Petition, More Definite Statement, and other filings together allege the following facts against SAHA and Carrillo, a SAHA employee. Plaintiffs claim that SAHA entered into a contract with MidCrowne to reserve certain dwellings for subsidized housing, and Plaintiffs entered into a lease with MidCrowne. (First Am. Pet. [#1-8] at ¶ 38.) During the lease, Mr. Payne requested certain accommodations due to a disability, such as a waiver of fees for covered parking, and Plaintiffs allege SAHA failed to engage in an interactive process regarding the claimed disability and wrongfully denied the requested accommodations. (First Am. Pet. [#1-8] at ¶¶ 103–106, 122–24; More Definite Statement [#29] at 5.) Mr. Payne filed an administrative complaint with HUD's Office of Fair Housing regarding the accommodation process, which was denied on the basis that his complaints were more of the

landlord-tenant nature and not subject to federal fair housing laws.  (More Definite Statement [#29] at 6; HUD Ltr. [#29] at 7.)

Plaintiffs claim that after Mr. Payne filed his complaint and during the accommodation process, SAHA and Carrillo retaliated against him with eviction.  (First Am. Pet. [#1-8] at ¶¶ 94, 103–106, 122–24, 134–35; More Definite Statement [#24] at 6.)  According to Plaintiffs, SAHA and Carrillo improperly retrieved a post from Mr. Payne's Facebook page depicting firearms and ammunition, falsely accused him as a threat to other tenants and employees based on the post, terminated his Section 8 housing voucher, and conspired with SAPD to wrongfully evict him despite his being current on his rent obligations without affording him a hearing.  (First Am. Pet. [#1-8] at ¶¶ 50, 51, 94, 134–35, 160, 184–85.)  In Plaintiffs' Response to Defendants' Motions to Dismiss, Plaintiffs also allege that SAHA posted photographs of Mr. Payne "at the entrance of their facility under the guise he committed a crime."  (Response [#7] at 6.)

**C.    Analysis**

It is somewhat unclear from Plaintiffs' First Amended Petition which causes of action Plaintiffs assert against SAHA and Carrillo.  This report and recommendation therefore considers the sufficiency of Plaintiffs' allegations against SAHA and Carrillo as to all claims included in Plaintiffs' Amended Petition.  The undersigned considers each claim in turn.

(i)    Section 1983 Claims against SAHA

Plaintiffs' first and second causes of action arise under Section 1983 of the Civil Rights Act of 1964.  Section 1983 provides a cause of action against "[e]very person" who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. 42 U.S.C. § 1983.  By statute, a housing authority such as SAHA is a governmental entity of the State of Texas.  Tex. Loc. Gov't Code § 392.006.  Under Section 1983, municipalities and other

such governmental units are considered "persons" subject to liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (local government entities are persons subject to suit under Section 1983); *De La O v. Hous. Auth. of the City of El Paso*, 417 F.3d 495, 503 (5th Cir. 2005) (claims against municipal housing authority treated as claims against municipality itself). "By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of foreign law—abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Owen v. City of Indep., Mo.*, 445 U.S. 622, 648 (1980).

However, only an official policy or custom of SAHA could expose it to liability for a violation of Plaintiffs' constitutional rights; *respondeat superior* liability for the acts of municipal employees is not available. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Municipal liability under 42 U.S.C. § 1983 requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.

Plaintiffs allege that SAHA violated Plaintiffs' civil rights by engaging in an illegal eviction, terminating their Section 8 housing contract, and violating due process. (First Am. Pet. [#1-8] at ¶¶ 46–87.) In conjunction with these claims, Plaintiffs also allege an illegal search and seizure of Plaintiffs' apartment, but the only Defendants allegedly involved in the search and seizure are the SAPD and individual officers, not SAHA. SAHA moves to dismiss Plaintiffs' Section 1983 claims on the basis that Plaintiffs have not alleged a policy or custom that could subject SAHA to municipal liability under Section 1983. The undersigned agrees with SAHA.

Regardless of whether Plaintiffs state a plausible claim for a violation of their constitutional rights, their Section 1983 claim against SAHA must be dismissed because Plaintiffs have not alleged any facts that suggest that an identified policymaker enacted a policy that is the moving force behind any such violation. Nor are there any allegations of a pattern or practice of similar retaliatory evictions so as to allege a custom based on a longstanding pattern or practice. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) ("A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy.") (internal quotation and citation omitted). Rather, all of Plaintiffs' allegations focus on the discrete wrongful acts taken against Plaintiffs in this case. Plaintiffs recite the law on municipal liability in their Petition and generally allege that SAHA and its employees were involved in the eviction. (*See* First Am. Pet. [#1-8] at ¶¶ 75–79.) But this is insufficient to state a claim under Section 1983 against a municipal entity. To survive SAHA's motion to dismiss, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory" and "must contain specific facts" that suggest a right to relief above the speculative level. *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Twombly*, 550 U.S. at 555. Plaintiffs do no more than recite the law on municipal liability and allege generally that there was a policy or custom underlying the constitutional violation. This Court need not credit these conclusory allegations. *Chhim*, 836 F.3d at 469. The Court should dismiss Plaintiffs' Section 1983 claims against SAHA.

(ii)     Section 1983 Claims against Carrillo

Plaintiffs also allege their Section 1983 claims against Carrillo, a SAHA employee who assists third-party property managers with lease negotiations, notices of lease violations, and

termination of leases.[1]  (Mot. to Dismiss [#4] at ¶ 3.)  Carrillo moves to dismiss Plaintiffs'

Section 1983 claims based on the affirmative defense of qualified immunity.

Qualified immunity shields federal and state officials from liability for civil damages

unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional

right, and (2) that the right was "clearly established" at the time of the challenged conduct.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).  A right is clearly established for purposes of the second step of the qualified-immunity

analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that

his or her conduct violated the statutory or constitutional right at issue.  *Saucier*, 533 U.S. at 206.

Stated another way, a right is clearly established if "the contours of the right [are] sufficiently

clear that a reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts to refrain from defining

clearly established law at a high level of generality.  *See, e.g.*, *al-Kidd*, 563 U.S. at 742.  Rather,

the inquiry must be undertaken in light of the specific factual context of the case.  *Mullenix v.*

*Luna*, --U.S.--, 136 S. Ct. 305, 308 (2015).  The dispositive question is "whether the violative

nature of particular conduct is clearly established."  *Al-Kidd*, 563 U.S. at 742.   Lower courts

have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.

*See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[1] Plaintiffs' Amended Petition appears to be alleging claims against Carrillo only in her individual capacity.  However, the Court notes that any cause of action against Carrillo in her official capacity under Section 1983 is simply another way of pleading an action against SAHA, the entity of which Carrillo is an agent.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 89 (1989)

The burden is on the plaintiff to disprove a defendant's qualified-immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To satisfy that burden on a motion to dismiss, the plaintiff must merely allege facts, taken as true, which show that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Id.* This Court construes *pro se* complaints and filings more liberally than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The essence of Plaintiffs' Section 1983 claim is that Carrillo violated Plaintiffs' right to procedural due process by falsely accusing Plaintiffs of being a danger to the safety of their fellow tenants and evicting them without a hearing. (First Am. Pet. [#1-8] at ¶ 134–35; More Definite Statmeent [#22] at 6.) In some circumstances, due process requires timely and adequate notice and the right to a hearing prior to eviction of public housing tenants. *Compare Richmond Tenants Org., Inc., v. Kemp*, 956 F.2d 1300, 1307 (4th Cir. 1992) (holding, in a federal public housing case, that "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment requires the government to provide for notice and an opportunity to be heard before a tenant may be evicted") *with Colvin v. Hous. Auth. of City of Sarasota, Fla.*, 71 F.3d 864, 867 (11th Cir. 1996) ("Congress has expressly granted Public Housing Authorities the right to deny a hearing to a tenant after a valid state court eviction that complies with basic due process.").

Carrillo's invocation of qualified immunity does not explain the basis for the assertion of qualified immunity, arguing only that she engaged in discretionary acts in the scope of her postion as an employee of SAHA and that she is entitled to qualified immunity. (Mot. to Dismiss [#4] at 7.) In making this argument, Carrillo improperly conflates the doctrines of official immunity and qualified immunity. Official immunity is a doctrine arising under Texas

law that provides a corollary to qualified immunity in the context of state-law claims. *Crostley v. Lamar County, Tex.*, 717 F.3d 410, 424 (5th Cir. 2013). This doctrine is inapplicable to Plaintiffs' federal Section 1983 causes of action. Carrillo may ultimately be entitled to qualified immunity with respect to Plaintiffs' Section 1983 claims, but her motion does not assist the Court or Plaintiffs in understanding the basis of her argument. And Plaintiffs' Amended Petition and More Definite Statement, construed liberally and taken as true, plead a plausible violation of clearly established law—eviction and termination of subsidized housing contract without process and without any real exigent circumstances to justify the lack of process. Plaintiffs' allegations assert the following:

- "Carrillo together with agents pursued [an] intentional campaign of misinformation pursuant to expelling [Plaintiffs'] from property in order to terminate public housing benefits." (*Id.* at ¶ 94.)

- "Carrillo together with agents . . . allegedly found a way around HUD's grievance mandate" to provide a housing tenant with the opportunity for a hearing. (*Id.* at ¶ 134.)

- "Carrillo together with agents . . . made a deliberate choice to ignore HUD's mandatory grievance procedures." (*Id.* at ¶ 135.)

- Carrillo "wrongfully evicted a tenant"; "unjustly singled out [Mr. Payne]"; and "affirmatively endeavored to stretch and manipulate the facts and evidence to fit the false hypothesis that he was guilty of breaching his lease agreement under the guise 'he engaged in criminal activity'." (*Id.* at ¶ 136.)

There may in fact have been exigent circumstances justifying the lack of a hearing and other process prior to Plaintiffs' eviction. However, at this stage of the proceedings, the Court is required to accept Plaintiffs' allegations as true. Plaintiffs claim they received no hearing prior to their eviction. Plaintiffs claim there was no exigency justifying the lack of process. The Court should therefore deny Carrillo's defense of qualified immunity without prejudice to

clarifying and presenting the defense at a later stage of this proceeding on a more complete record.

    (iii)    <u>Texas Tort Claims against SAHA</u>

Plaintiffs allege SAHA is liable for intentional infliction of emotional distress and negligence in connection with the eviction and termination of his subsidized housing contract. Plaintiffs specifically state in their Amended Petition that they are not pursuing their tort claims against Carrillo, only SAHA. (First Am. Pet. [#1-8] at ¶ 146.) The Court therefore only considers these claims as asserted against SAHA. These claims must be dismissed under the doctrine of governmental immunity.

Sovereign immunity shields a state from suit unless it expressly consents to being sued. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citations omitted). Under Texas law, governmental immunity affords similar protection to political subdivisions of the state. *Alcala v. Tex. Webb Cty.*, 620 F. Supp. 2d 795, 801–02 (S.D. Tex. 2009) (citing *Sykes*, 136 S.W.3d at 638). By statute, a housing authority such as SAHA is a governmental entity enjoying such immunity. Tex. Loc. Gov't Code § 392.006.

Under Texas law, a governmental unit is immune from tort liability unless the Legislature has waived immunity by statute through "clear and unambiguous language." *See Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998); Tex. Gov't Code § 311.034 ("a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language"). The Texas Legislature waived governmental immunity over certain tort causes of action against governmental entities through the passage of the Texas Tort Claims Act ("TTCA"). *See* Tex. Civ. Prac. & Rem. Code § 101.001, *et seq.* Plaintiffs repeatedly cite this statute in their Petition as a basis for their lawsuit.

Yet, the TTCA contains only a limited waiver of sovereign immunity that does not cover the state-law claims asserted by Plaintiffs.

The TTCA waives governmental immunity in only three general areas: "use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property." *Brown v. Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex. App.—Beaumont 1995, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 101 .021). Additionally, governmental immunity is not waived for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2). Accordingly, the TTCA is not a basis for setting aside the immunity of SAHA as to Plaintiffs' claims of intentional infliction of emotional distress or their negligence claim, which is unrelated to the use of motor vehicles, premises defects, or injuries caused by a condition of personal or real property.

      (iv)    <u>Deceptive Trade Practices Act Claims Against SAHA and Carrillo</u>

Plaintiffs contend that SAHA and Carrillo made misrepresentations about Mr. Payne's Facebook post in violation of the Texas Deceptive Trade Practices Act ("DTPA"). The DTPA grants consumers a cause of action against "any person" for false, misleading, or deceptive acts or practices. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see also* Tex. Bus. & Com Code Ann. § 17.50(a)(1) (allowing consumer to maintain a civil action against any "person" using or employing a false, misleading, or deceptive act or practice as defined by statute).

Plaintiffs' DTPA claims against SAHA should be dismissed. The Texas Legislature did not include governmental entities like SAHA in the DTPA's definition of "person." *City of Wylie v. Taylor*, 362 S.W.3d 855, 864 (Tex. App.—Dallas 2012, no pet.) (citing Tex. Bus. & Com. Code § 17.45(3)). Plaintiffs therefore cannot maintain a cause of action under the DTPA

against SAHA. Moreover, the DTPA also does not include an express waiver of sovereign immunity. *Prof'l Res. Plus v. Univ. of Tex., Austin*, No. 03-10-00524-CV, 2011 WL 749352, at *1 (Tex. App. – Austin Mar. 4, 2011, no pet.). Therefore, SAHA is immune from suit under the same immunity principles prohibiting Plaintiffs' Texas tort claims.

Carrillo claims that she is immune from liability for Plaintiffs' DTPA claim as well. This is the only basis for dismissal asserted in her motion to dismiss, despite the fact that there appear to be other deficiencies with Plaintiffs' DTPA claim. Official immunity inures to all government employees who perform discretionary duties in good faith and within their authority. *Crostley v. Lamar County*, 717 F.3d 410, 424 (5th Cir. 2013); *DeWitt v. Harris County*, 904 S.W.2d 650, 652 (Tex. 1995). The elements of the defense of official immunity are "(1) the performance of discretionary duties (2) that are within the scope of the employees' authority, (3) provided that the employee acts in good faith." *Crostley*, 717 F.3d at 424 (quoting *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002)). "Texas law of official immunity is substantially the same as federal qualified immunity." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). "An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the facts justified his conduct." *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656–57 (Tex. 1994)). Like the federal standard from which it is derived, Texas's good-faith test is one of objective legal reasonableness. *Id.* The defendant claiming official immunity bears the burden of proving all elements of the defense. *Chambers*, 883 S.W.2d at 653. To survive a motion to dismiss, however, a plaintiff must merely plead specific facts, that, if proved, would overcome an official's immunity defense. *Murray v. Earle*, 334 Fed. App'x 602, 608 (5th Cir. 2009).

Plaintiffs allege that Carrillo was, at all times relevant to this lawsuit, acting within the scope of her employment. (First Am. Pet. [#1-8] at ¶¶ 26.) However, Plaintiffs' Amended Petition and More Definite Statement, taken as true, do not establish Carrillo's good faith as a matter of law. Plaintiff contends that Carrillo misrepresented and falsely accused Plaintiff of being a threat to other tenants and employees, which resulted in Plaintiffs being evicted from their apartment. (More Definite Statement [#22] at 6.) Plaintiffs further claim that "Carrillo together with agents pursued [an] intentional campaign of misinformation pursuant to expelling [Plaintiffs'] from property in order to terminate public housing benefits" (First Am. Pet. [#1-8] at ¶ 94) and "affirmatively endeavored to stretch and manipulate the facts and evidence to fit the false hypothesis that he was guilty of breaching his lease agreement under the guise 'he engaged in criminal activity'" (*Id.* at ¶ 136). Because Plaintiffs allege facts that, if true, could plausibly demonstrate Carrillo's bad faith, Carrillo is not entitled to official immunity at the pleading stage of this case. The Court should not dismiss Plaintiffs' DTPA claim against Carrillo in her individual capacity.

(v)     Disability Discrimination and Failure to Accommodate

In asserting this claim, Plaintiffs mention disability discrimination, the failure to accommodate a disability, Section 1983, the Texas Constitution, the Texas Fair Housing Act, and the federal Fair Housing Act. The factual allegations supporting this claim, however, are that Defendants denied Mr. Payne reasonable accommodation for his disability; that Mr. Payne suffered an adverse action when he was removed from housing because of his disability; and Mr. Payne was treated less favorably than non-disabled tenants. (First Am. Pet. [#1-8] at ¶¶ 121–26.) Plaintiffs do not mention the Americans with Disabilities Act in their allegations or explain the nature of Mr. Payne's alleged disability, other than referencing his mental health. (*Id.* at ¶ 72.)

Under the federal Fair Housing Act ("FHA"), "a public entity engages in a discriminatory practice if it refuses to make a 'reasonable accommodation' to 'rules, policies, practices or services when such accommodation may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling.'" *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018) (quoting 42 U.S.C. § 3604(f)(3)(B)). "Reasonable accommodation claims under the FHA . . . require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled." *Id.* The Texas Fair Housing Act ("TFHA") also makes it unlawful to "discriminate in the sale or rental of, or make unavailable or deny, a dwelling to any buyer or renter because of a disability." Tex. Prop. Code § 301.025.

To state a claim for intentional discrimination based on a disability under these Acts, Plaintiffs must allege a qualifying disability; that Plaintiffs are being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by Defendants; and that the discrimination is due to the disability. *Providence Behavioral Health*, 902 F.3d at 457. Plaintiffs do not describe the disability at issue, even after being given an opportunity to file a More Definite Statement. Plaintiffs simply repeat over and again that Mr. Payne was denied a request for reasonable accommodation and that the accommodation requested concerned a waiver of fees for covered parking. (More Definite Statement [#22] at 5.) Even construing Plaintiffs' pleadings liberally, there are no facts by which the Court can determine whether Mr. Payne suffered from a qualifying disability so as to state a plausible claim under the FHA, the TFHA, or any other statute.

But SAHA and Carrillo do not move to dismiss on this basis. Rather, Defendants focus on Plaintiffs' allegations of "harassment" in connection with this claim and argue that Plaintiffs

fail to allege what harassment occurred. (Mot. to Dismiss [#3] at 10; Mot. to Dismiss [#4] at 10.) SAHA and Carrillo also construe this claim as arising under Section 1983 and reiterate their same arguments raised in response to Counts I and II. (*Id.*) Because Defendants do not address all the possible claims that Plaintiffs could be asserting through Count III, the Court will allow Plaintiffs to proceed with these allegations at this early stage of the proceedings and will consider the identified defects, if raised by Defendants, at a future stage in the proceedings.

(vi)     Section 1985 Conspiracy

Plaintiffs allege a conspiracy to violate their constitutional rights in violation of Section 1985. 42 U.S.C. § 1985(3). A plaintiff suing under Section 1985 must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Angel v. La Joya Indep. Sch. Dist.*, 717 Fed. App'x 372, 378–79 (5th Cir. 2017). Defendants contend Plaintiffs fail to sufficiently allege a conspiracy involving two or more persons and any acts taken by SAHA and Carrillo in furtherance of the conspiracy and therefore their claim under Section 1985 fails as a matter of law.

As to SAHA, Plaintiffs' Section 1985 claim must be dismissed. A municipal entity can only be sued under Section 1985 if there is an official policy or custom causing the plaintiff's injury, as with a claim under Section 1983. *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006). The undersigned has already concluded Plaintiffs fail to allege such a policy. Plaintiffs therefore fail to state a violation of Section 1985 against SAHA.

Regarding Carrillo, Plaintiffs' First Amended Petition alleges that Carrillo entered into a conspiracy with Sara Ortiz and Leticia Clark to interfere with Mr. Payne's continued receipt of his Section 8 benefits. (First Am. Pet. [#1-8] at ¶ 159.) Plaintiffs do not identify who Ms. Ortiz and Ms. Clark are but allege that management of MidCrowne alerted SAHA regarding Mr. Payne's Facebook post and with support of the SAPD illegally searched Mr. Payne's apartment, seized his firearm, and evicted him from the apartment. (*Id.* at ¶ 160.) The employees of an entity are not considered to be "persons" separate from such entity for conspiracy purposes. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Accordingly, Carrillo cannot conspire with SAHA as she is an employee of that entity. Nonetheless, construing Plaintiffs' pleadings liberally, the Court concludes that Plaintiffs have alleged a conspiracy between two or more persons—Carrillo and SAHA, MidCrowne, and the SAPD—and acts taken in furtherance of the conspiracy—informing fellow conspirators about the Facebook posting, posting pictures at the entrance of SAHA's facility as if Mr. Payne had committed a crime, searching Mr. Payne's apartment, seizing his firearm, and choosing to evict him. Defendants do not assert any other basis for dismissal of Plaintiffs' Section 1985 claim. Accordingly, the Court should decline to dismiss this claim against Carrillo.

(vii)     Section 1986 Claims

Section 1986 prohibits neglecting to prevent a conspiracy that interferes with civil rights. 42 U.S.C. § 1986. SAHA and Carrillo contend this claim should be dismissed against them because this cause of action focuses on the City of San Antonio alone. The undersigned agrees that Plaintiffs have not alleged any facts that SAHA and Carrillo are liable under Section 1986. Rather, Plaintiffs allege that the City of San Antonio and Mayor Nirenberg had actual knowledge

of the reported wrongs and did nothing to prevent Plaintiffs' eviction. (First Am. Pet. [#1-8] at ¶ 173–75.) The Court should dismiss this claim against SAHA and Carrillo.

In summary, the Court should grant SAHA's motion to dismiss in full and dismiss all of Plaintiffs' claims against SAHA. As to Carrillo, the Court should grant her motion to dismiss in part and deny it in part, dismissing Plaintiffs' claims against her for intentional infliction of emotional distress (Count IV), violation of Section 1986 (Count VI), and negligence (Count VIII). Plaintiffs should be able to proceed with their claims against Carrillo under Section 1983 (Counts I and II), disability discrimination (Count III), civil conspiracy under Section 1985 (Count V), and conspiracy to violate the DTPA (Count VII).

### III. Motion for Sanctions

By their motion for sanctions, Defendants SAHA and Carrillo jointly ask the Court to rule that Plaintiffs are vexatious litigants and order Plaintiffs to seek permission from the Court before filing any future cases against Defendants. SAHA and Carrillo maintain that Mr. Payne has filed at least 21 frivolous lawsuits over the past 12 years and has previously been sanctioned for his conduct. (*See* Ex. A [#5-1].)

Rule 11 of the Federal Rules of Civil Procedure provides for the imposition of sanctions. Fed. R. Civ. P. 11(c). Sanctions may be appropriate if the Court finds that a document has been presented for an improper purpose; if the claims presented are not warranted by existing law; or if the factual contentions at issue have no evidentiary support. *Id.* at 11(b). Sanctions may also be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *Mendoza v. Lynaugh*, 989 F.2d 191, 195–97 (5th Cir. 1993).

The undersigned is concerned regarding the number of cases filed by Mr. Payne in this Court and in others and the toll such litigation takes on the court system. However, the Court

should not impose sanctions in this case. First, Plaintiffs did not file this lawsuit in the Western District of Texas. This case was filed in state court and removed by SAHA. This is not the proper case, procedurally speaking, for the Court to impose a pre-filing injunction on Plaintiffs. Moreover, although the undersigned is recommending the dismissal of Plaintiffs' claims against SAHA and most of their claims against Carrillo, Defendants have overstated the merits of their motions to dismiss and the breadth of the immunity doctrines upon which they primarily rely in seeking sanctions against Plaintiffs. The Court should therefore deny the motion for sanctions.

### IV.  Motion for Reconsideration

Plaintiffs' Motion for Reconsideration [#38] argues that the Court should reconsider its September 4, 2019 Order denying Plaintiffs' Motion for Entry of Default against MidCrowne [#31]. The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Such motions are therefore generally analyzed under the standards for a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). A motion for reconsideration under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(b). Otherwise, the motion falls under Rule 60. Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time—and . . . no more than a year after the entry of the judgment or order or the date of the proceeding."). Because Plaintiffs filed their motion more than 28 days of the Court's challenged order, their motion is governed by Rule 60(b).

Rule 60(b) provides for relief from a final judgment under the following circumstances: (i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule

59(b); (iii) fraud, misrepresentation, or other misconduct of an adverse party; (iv) the judgment is void; (v) the judgment has been satisfied, released or discharged; or (vi) any other reason justifying relief from the operation of the judgment. *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669 (5th Cir. 1986). Plaintiffs have failed to establish any basis for the reconsideration of the Court's previous Order.

The record reflects that on September 4, 2019, the Court denied Plaintiffs' Motion for Entry of Default against MidCrowne. A default should be entered where a defendant fails to file a proper responsive pleading in response to being sued. Fed. R. Civ. P. 55(a). Here, in response to Plaintiffs' lawsuit, MidCrowne filed a motion for more definite statement seeking to determine whether or not it was a named Defendant in this lawsuit. The filing of a Rule 12 motion, including a motion for more definite statement, satisfies a defendant's obligation to file a proper responsive pleading. *See* Fed. R. Civ. P. 12(a)(4)(B) (excusing the filing of a responsive pleading until after the more definite statement is served). The Court had previously ordered Plaintiffs to file a more definite statement in the form of a chart detailing the factual allegations against each Defendant. Plaintiffs filed their More Definite Statement as ordered, and the Court determined that Plaintiffs clearly asserted causes of action under MidCrowne. The Court therefore ordered MidCrowne to file a responsive pleading within 14 days of the Court's Order. MidCrowne timely answered Plaintiffs' Petition [#34]. There is no basis for relief from the Court's previous Order. The Court will therefore deny this motion.

## V. Conclusion, Recommendation, and Orders

Having considered the motions before the Court, the responses and replies thereto, Plaintiffs' pleadings, and the governing law, the undersigned recommends the following:

- San Antonio Housing Authority's Rule 12(b)(6) Motion to Dismiss [#3] be **GRANTED** and all of Plaintiffs' claims against SAHA be **DISMISSED**.

- Amy V. Carrillo's Rule 12(b)(6) Motion to Dismiss [#4] be **GRANTED IN PART AND DENIED IN PART** as follows: The Court should dismiss Plaintiffs' claims against Carrillo for intentional infliction of emotional distress (Count IV), violation of Section 1986 (Count VI), and negligence (Count VIII). Plaintiffs other claims against Carrillo should proceed.

- San Antonio Housing Authority and Amy V. Carrillo's Joint Rule 11 Motion for Sanctions [#5] be **DENIED**.

**IT IS ALSO ORDERED** that Plaintiffs' Motion for Reconsideration of an Order Denying Pro Se's Request for Entry of Default against MidCrowne [#38] is **DENIED**.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 20th day of December, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE