IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DON ALBERT PAYNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED; AND GLORIA JEAN PAYNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED; | § § § § § § § § § | SA-19-CV-00407-FB |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| CITY OF SAN ANTONIO, TEXAS, SAN ANTONIO POLICE DEPARTMENT, WILLIAM KASBERG, SHANNON PURKISS, GERARDO MORALES, RON NIRENBERG, WILLIAM MCMANUS, MIDCROWN PAVILION APARTMENTS,  SAN ANTONIO HOUSING AUTHORITY, AMY CARRILLO, | § § § § § § § § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation and Order concerns the following dispositive and non-dispositive motions:  Defendant Amy V. Carrillo's 12(c) Motion for Judgment on the Pleadings [#82]; Defendants William Kasberg, Shannon Purkiss, and Gerardo Morales's Motion for Summary Judgment [#98]; Defendants City of San Antonio, Texas, San Antonio Police Department, Ron Nirenberg, and William McManus's Motion for Summary Judgment [#99]; Plaintiffs' Opposition Motion and Motion to Strike Highlighted Portions of Defendants Declarations Submitted in Support of their Motion for Summary Judgment [#101]; and

1

Plaintiffs' Opposition Motion and Motion to Strike Highlighted Portions of Defendant's Declaration Submitted in Support of the City, Mayor, and SAPD's Motion for Summary Judgment [#102].

All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6].  The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and this order pursuant to 28 U.S.C. § 636(b)(1)(A).  In reviewing the motions before the Court, the undersigned has construed Plaintiffs' "Opposition Motions" as their responses to Defendants' motions for summary judgment and has also considered the reply filed by Defendants Kasberg, Purkiss, and Morales [#104].  For the reasons set forth below, the Court will recommend that the District Court **GRANT** Carrillo's motion for judgment on the pleadings; **GRANT** the motion for summary judgment filed by Kasberg, Purkiss, and Morales; and **GRANT** the motion for summary judgment filed by the City of San Antonio, San Antonio Police Department, Nirenberg, and McManus.  The Court will also **DENY** Plaintiffs' motions to strike but **SUSTAIN** the objections to Plaintiffs' summary judgment evidence raised by Defendants Kasberg, Purkiss, and Morales.

## I.  Procedural Background

Plaintiffs, proceeding *pro se*, originally filed this lawsuit in the County Court at Law No. 3 in Bexar County, Texas on September 21, 2018.  (Case History [#1-9] at 4–9.)  While this case was still pending in state court, Plaintiffs filed their 74-page First Amended Petition, which remains the live pleading in this case.  (First Am. Pet. [#1-8] at 2–76.)

The First Amended Petition names as Defendants the City of San Antonio, Amy V. Carrillo Individually of the San Antonio Housing Authority ("SAHA"), and various officers of

the San Antonio Police Department ("SAPD") in their individual capacities—Officer William Kasberg, Officer Shannon Purkiss, and Officer Gerardo Morales.  The Petition also mentions SAHA itself as a Defendant, as well as Midcrown Pavilion Apartments, Mayor Ron Nirenberg, and Police Chief William McManus throughout the body of the Petition.

At the time Plaintiffs filed their Original and Amended Petitions, they had a nearly identical cause of action pending in the Justice of the Peace Court under cause number 2018-CV-06441.  The two causes of action were consolidated in state court under cause number 2018-CV-05843 on December 14, 2018.  (Order Granting Mtn. to Consolidate [#1-3] at 2.)  The City of San Antonio removed the consolidated case to this Court, but the case was remanded due to a procedural defect with the removal.  (Notice of Removal [#1-4, #1-5].)  Following remand, SAHA, which had not been served prior to the original removal and remand, waived service of process and removed this case to this court on April 17, 2019.  (Notice of Removal [#1].)

Plaintiffs' Amended Petition alleges that they signed a lease agreement with Midcrown Pavilion Apartments ("Midcrown"), and SAHA contractually agreed to subsidize their rent under the Section 8 Program run by the U.S. Department of Housing and Urban Development ("HUD").  According to Plaintiffs, they satisfied every payment obligation under the lease, but were nonetheless evicted in retaliation for their request for a reasonable accommodation for a disability.  It is unclear from the Petition the precise nature of the accommodation requested. Plaintiffs further allege that they were subject to an unlawful warrantless search of their apartment and seizure of a firearm after management of Midcrown alerted SAHA to a post on Mr. Payne's Facebook page that concerned firearms and ammunition.  The pleadings also contain allegations regarding the seizure of Mr. Payne's person for "psychiatric detention."

Plaintiffs' First Amended Petition asserts the following causes of action against the various Defendants:  (1) wrongful eviction/unlawful search and seizure pursuant to Section 1983; (2) due process violation pursuant to Section 1983; (3) disability discrimination and failure to accommodate; (4) intentional infliction of emotional distress; (5) civil conspiracy pursuant to 42 U.S.C. § 1985; (6) violation of Section 1986; (7) conspiracy to violate the Texas Deceptive Trade Practices Act ("DTPA"); and (8) negligence.

Soon after removal, Defendants SAHA and Carrillo filed motions to dismiss, and Midcrown filed a motion for a more definite statement to determine whether Plaintiffs in fact intended to name it as a Defendant in this suit.  The Court granted Midcrown's motion and ordered Plaintiffs to file a more definite statement to assist Midcrown and the Court in determining the nature of the allegations in this case.  Plaintiffs filed their More Definite Statement as directed, which the Court incorporates as part of the pleadings.  (More Definite Statement [#29].)  The More Definite Statement is comprised of a chart listing each Defendant, the Defendant's alleged misconduct, and Plaintiff's alleged injury stemming from that conduct.

The District Court granted SAHA's motion to dismiss and dismissed SAHA from this action.  (Order [#59].)  Carrillo's motion was granted in part.  (*Id.*)  Carrillo has now moved for judgment on the pleadings as to the remaining claims still pending against her.  Defendants Kasberg, Morales, Purkiss (sued in their individual capacities as officers of the SAPD) have moved for summary judgment, as have Defendants the City of San Antonio, the SAPD, Chief McManus, and Mayor Nirenberg.  Even though Plaintiff filed a More Definite Statement clearly asserting claims against Midcrown, Midcrown has not filed a dispositive motion.  For the reasons that follow, the Court should grant all three dispositive motions.

## II.  Carrillo's Motion for Judgment on the Pleadings

The following claims remain pending against Carrillo: wrongful eviction/unlawful search and seizure pursuant to Section 1983 (Count I); due process violation pursuant to Section 1983 (Count II); disability discrimination and failure to accommodate (Count III); civil conspiracy pursuant to Section 1985 (Count V), and conspiracy to violate the DTPA (Count VII).  Carrillo asks the Court to dismiss all of Plaintiffs' remaining claims against her under Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons that follow, the Court should grant the motion.

### A.    Rule 12(c) Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Furthermore, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Twombly*, 550 U.S. at 570.

## B.    Facts Alleged Against Carrillo

Plaintiffs' First Amended Petition, More Definite Statement, and other filings together allege the following facts against Carrillo, a SAHA employee responsible for assisting third-party property managers with lease negotiations, notices of lease violations, and terminating leases. (*See* Mtn. to Dismiss [#82] at ¶ 3.) Plaintiffs claim that SAHA entered into a contract with Midcrown to reserve certain dwellings for subsidized housing, and Plaintiffs entered into a lease with Midcrown. (First Am. Pet. [#1-8] at ¶ 38.) According to Plaintiffs, during the lease term, Mr. Payne requested certain accommodations due to a disability, and SAHA failed to engage in an interactive process regarding the claimed disability and wrongfully denied the requested accommodations. (*Id.* at ¶¶ 103–106, 122–24; More Definite Statement [#29] at 5.) Plaintiffs do not provide any more details regarding the alleged disability or the requested accommodations. Plaintiffs also allege that Mr. Payne filed an administrative complaint with HUD's Office of Fair Housing regarding the accommodation process, and the complaint was denied on the basis that his complaints were more of the landlord-tenant nature and not subject to federal fair housing laws. (More Definite Statement [#29] at 6; HUD Ltr. [#29] at 7.)

Plaintiffs claim that after Mr. Payne filed his complaint and during the accommodation process, Carrillo retaliated against him with eviction.  (First Am. Pet. [#1-8] at ¶¶ 94, 103–106, 122–24, 134–35; More Definite Statement [#24] at 6.)   According to Plaintiffs, Carrillo improperly retrieved a post from Mr. Payne's Facebook page depicting firearms and ammunition, falsely accused him of being a threat to other tenants and employees based on the post, terminated his Section 8 housing voucher, and conspired with SAPD to wrongfully evict him (despite his being current on his rent obligations) without affording him a hearing.  (First Am. Pet. [#1-8] at ¶¶ 50, 51, 94, 134–35, 160, 184–85.)  Plaintiffs state in their Petition that SAPD officers seized a 9mm Glock 17 and ammunition from Plaintiff's apartment as part of their investigation.  (*Id.* at 53.)

## C.    Analysis

All of Plaintiffs' remaining claims against Carrillo should be dismissed.

### i.    Section 1983 Claims

Plaintiffs' first and second causes of action arise under Section 1983 of the Civil Rights Act of 1964.  Section 1983 provides a cause of action against "every person" who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. 42 U.S.C. § 1983.  Plaintiffs allege that Carrillo violated their rights to procedural due process and to be free from an unlawful search and seizure in terminating their Section 8 housing voucher and evicting them from their apartment.

Carrillo moves for dismissal of Plaintiffs' Section 1983 claims based on the affirmative defense of qualified immunity.  Carrillo previously asserted qualified immunity in her motion to dismiss pursuant to 12(b)(6), but the District Court denied the defense, concluding that she had not adequately explained the basis for the defense in her motion.  In doing so, the District Court

indicated that Carrillo could reassert the defense at a later stage of the proceedings by more clearly presenting the basis for her qualified immunity.

Qualified immunity shields federal and state officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts to refrain from defining clearly established law at a high level of generality. *See, e.g.*, *al-Kidd*, 563 U.S. at 742. Rather, the inquiry must be undertaken in light of the specific factual context of the case. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The dispositive question is "whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742. Lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The burden is on the plaintiff to disprove a defendant's qualified-immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To satisfy that burden in the context of a motion to dismiss (or here, a motion for judgment on the pleadings), the plaintiff must allege facts, taken as true, which show that a defendant violated the plaintiff's

constitutional rights and that the violation was objectively unreasonable.  *Id.*  This Court construes *pro se* complaints and filings more liberally than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The essence of Plaintiffs' Fourth Amendment claim is that they were subjected to a warrantless search of their apartment without probable cause and an illegal seizure of their firearm and ammunition, as well as Mr. Payne's person.  Plaintiffs also allege that they were denied procedural due process in losing their Section 8 housing benefits and suffering an eviction without first being afforded a hearing.

Carrillo argues she is entitled to qualified immunity on Plaintiffs' search and seizure claim because there are no allegations against her personally regarding the search conducted by SAPD and the seizure of Plaintiffs' Glock-17 firearm and ammunition or the seizure of Mr. Payne's person for a pscyhiatric evaluation.  Carrillo argues she is entitled to qualified immunity on Plaintiffs' due process claim because the only inference that can be made from the pleadings is that Midcrown alerted her to Mr. Payne's Facebook post, and she relayed the information to her superiors or SAPD, conduct that Carrillo argues was objectively reasonable and does not constitute a violation of due process.  Carrillo also attempts to distance herself from the decision to terminate Plaintiffs' Section 8 housing benefits and to evict them by arguing that she was not Plaintiffs' landlord, only the landlord's agent, citing to Texas landlord-tenant law.

Carrillo's motion for judgment on the pleadings raises specific arguments regarding her entitlement to qualified immunity that were not raised in her original 12(b)(6) motion.  Again, the burden is on Plaintiffs to disprove a qualified-immunity defense.  *See Club Retro, L.L.C.*, 568 F.3d at 194.  Plaintiffs did not file a response to Carrillo's motion in the time designated for responses to dispositive motions under this Court's Local Rules.  *See* W.D. Tex. Loc. R CV-7(e)

(responses to dispositive motions due within 14 days of the motion's filing).  Nor have Plaintiffs filed a motion for leave to file a response out of time, despite ample opportunity to do so in the months that the motion has been pending.  On this record, Carrillo is entitled to her immunity defense.

As to the Fourth Amendment claim, the undersigned agrees with Carrillo that all of the allegations in Plaintiffs' pleadings regarding the search and seizure concern SAPD.  (*See, e.g.*, First Am. Pet. [#1-8] at ¶¶ 62–68.)  Because Plaintiffs have not alleged that Carrillo violated their constitutional rights by engaging in an unlawful search and seizure (and have not come forth in response to her motion with any arguments as to why Carrillo is implicated in this claim), Carrillo is entitled to qualified immunity on Plaintiffs' Section 1983 claim based on the Fourth Amendment.

As to Plaintiffs' due process claim, Plaintiffs' Amended Petition and More Definite Statement allege that Carrillo "ignored HUD's mandatory grievance procedures" and terminated their lease agreement under "the false hypothesis that [Mr. Payne] was guilty of breaching his lease agreement under the guise 'he engaged in criminal activity.'"  (*Id.* at ¶¶ 134–136.)  Plaintiffs accuse Carrillo of terminating their Section 8 housing benefits and evicting them without a hearing.  (*Id.* at ¶ 134–35; More Definite Statement [#22] at 6.)  As the undersigned noted in the previous report and recommendation on Carrillo's 12(b)(6) motion, in some circumstances, federal courts have held that due process requires timely and adequate notice and the right to a hearing prior to eviction of public housing tenants.  *Compare Richmond Tenants Org., Inc., v. Kemp*, 956 F.2d 1300, 1307 (4th Cir. 1992) (holding, in a federal public housing case, that "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment requires the government to provide for notice and an opportunity to be heard before

a tenant may be evicted") *with Colvin v. Hous. Auth. Of City of Sarasota, Fla.*, 71 F.3d 864, 867 (11th Cir. 1996) ("Congress has expressly granted Public Housing Authorities the right to deny a hearing to a tenant after a valid state court eviction that complies with basic due process.").

Although Carrillo's motion does not address the specific question of what process is due before the termination of public housing benefits, Carillo appears to argue that exigent circumstances were present that supported SAHA's and her own actions in this case. In her motion, Carrillo directs the Court to the portion of Plaintiffs' pleadings in which they describe the Facebook post that allegedly resulted in their eviction. According to Plaintiffs, Mr. Payne's post depicted him holding weapons and ammunition with text stating, "[t]he Government is out to get him, and [if] that was the case, he'd like to take as many of them with him." (First Am. Pet. [#1-8] at ¶¶ 160, 186.)

Carrillo argues her conduct in reporting the post to SAHA or SAPD was objectively reasonable. And the undersigned concludes that Carrillo has sufficiently asserted a defense to Plaintiffs' due process claim in identifying the exigent circumstances—a threat of violence against the Government—that could have justified an eviction without a prior hearing. To award Carrillo qualified immunity, this Court need not conclusively determine that Carrillo's alleged acts did not violate the Due Process Clause, only that they did not constitute a clearly established constitutional violation. *See Pearson*, 555 U.S. at 236. Plaintiffs' lack of response to Carrillo's qualified immunity defense is fatal to their due process claim. They have not directed the Court to any authority clearly establishing that it is a violation of due process to terminate Section 8 housing benefits and evict a tenant, without a prior hearing, where the tenant has made a public threat of violence. Because Plaintiffs have adduced nothing to rebut Carrillo's defense, they

have not satisfied their heavy burden to demonstrate a violation of clearly established law and Carrillo is entitled to qualified immunity.

    ii.    <u>Disability Discrimination and Failure to Accommodate</u>

Count III of Plaintiffs' Petition asserts a cause of action for disability discrimination. Plaintiffs allege that Mr. Payne suffers from a disability; that he requested a reasonable accommodation for his disability; that he was refused an accommodation; and that he was treated less favorably than non-disabled tenants.  (First Am. Pet. [#12] at ¶¶ 121–126.)  In conjunction with these allegations, Plaintiffs reference the Texas Fair Housing Act, the federal Fair Housing Act, the Texas Constitution, and Section 1983.

The Fifth Circuit has held that claims of disability discrimination cannot be enforced pursuant to Section 1983 because Congress has created a "specific comprehensive internal enforcement mechanism to protect the rights of the disabled" through the Americans with Disabilities Act and the Rehabilitation Act.  *Lollar v. Baker*, 196 F.3d 603, 609–10 (5th Cir. 2012).  Plaintiffs do not, however, mention the ADA in connection with their allegations.

Under the federal Fair Housing Act ("FHA"), "a public entity engages in a discriminatory practice if it refuses to make a 'reasonable accommodation' to 'rules, policies, practices or services when such accommodation may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling.'"  *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018) (quoting 42 U.S.C. § 3604(f)(3)(B)).  "Reasonable accommodation claims under the FHA . . . require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled."  *Id.*  The Texas Fair Housing Act ("TFHA") also

makes it unlawful to "discriminate in the sale or rental of, or make unavailable or deny, a dwelling to any buyer or renter because of a disability." Tex. Prop. Code § 301.025(a).

To state a claim for intentional discrimination based on a disability under these Acts, Plaintiffs must allege a qualifying disability; that Plaintiffs were denied the benefits of services, programs, or activities for which the public entity is responsible, or were otherwise discriminated against by Defendants; and that the discrimination was due to the disability. *Providence Behavioral Health*, 902 F.3d at 457. The same would be true if the Court construed Plaintiffs' claims under the ADA or Rehabilitation Acts; the essential elements to any of these claims are that the plaintiff is a "qualified individual with a disability," and that the disability was both known and not accommodated or the basis of some discriminatory act. *See Feist v. La., Dep't of Justice, Office of Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). The term "disability" as used in the ADA means:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

Carrillo's motion for judgment on the pleadings argues that Plaintiffs' disability discrimination claim fails as a matter of law because Plaintiffs do not plead a qualifying disability, even after being given an opportunity to file a More Definite Statement. Carrillo also argues that Plaintiffs fail to allege any act or omission by Carrillo with regard to the allegations of the failure to accommodate and disability discrimination.

The undersigned agrees that Plaintiffs' pleadings fail to identify the disability at issue. Plaintiffs' pleadings vaguely reference Mr. Payne's mental health and a "mental condition," but

do not describe the nature of any mental disability or identify the disability by name.  (*See* First Am. Pet. [#12] at ¶¶ 72, 125.)  Again, Plaintiffs have not filed a response to Carrillo's motion that might save this claim from dismissal based on this identified deficiency in their pleadings. Plaintiffs therefore fail to state a claim for disability discrimination or a failure to accommodate a disability.  *Doe v. Harris County, Tex.*, No. H-16-2133, 2017 WL 4402590, at *29 (S.D. Tex. Sept. 29, 2017) (failure to identify requested accommodation and how denial of requested accommodation was motivated by disability was fatal to ADA claim); *Petty v. Orleans Parish Sch. Bd.*, No. 13-6021, 2014 WL 545860, at *7 (E.D. La. Feb. 11, 2014) (holding that conclusory allegation that plaintiff was denied reasonable accommodations for "medical condition," without identifying the alleged disability, failed to state a claim under ADA).

Moreover, even if Plaintiffs had sufficiently alleged these elements, the Court agrees with Carrillo that there are no facts in the pleadings linking Carrillo to the alleged failure to accommodate.  The only Defendant referenced in the paragraphs related to Mr. Payne's disability is SAHA, who has already been dismissed from this action.  Although Carrillo is undisputedly an employee of SAHA, Plaintiffs must do more to link her to the complained-of actions than merely attribute the wrongful acts generally to her employer.  Carrillo is entitled to dismissal of Plaintiffs' disability discrimination and failure to accommodate claims.

iii.   <u>Civil Conspiracy</u>

Plaintiffs allege a conspiracy to violate their constitutional rights in violation of Section 1985.  42 U.S.C. § 1985(3).  A plaintiff suing under Section 1985 must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or

privilege of a citizen of the United States.  *Angel v. La Joya Indep. Sch. Dist.*, 717 Fed. App'x 372, 378–79 (5th Cir. 2017).

Qualified immunity is available as a defense to Section 1985, as it is to Section 1983, and Carrillo has also asserted it here.  *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir. 2004) (en banc); *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 556 (5th Cir. 1997).  Again, Plaintiffs have not responded to Carrillo's motion to identify any clearly established violation of law by Carrillo.  "[T]here can only be a deprivation of rights of a plaintiff [under Section 1985] where the action of the defendants is otherwise illegal."  *McClellan v. Miss. Power & Light Co.*, 545 F.2d 919, 925 (5th Cir. 1977).  Because Plaintiffs have failed to allege any act in furtherance of the alleged conspiracy to terminate his public housing benefits and evict him that is a clearly established violation of federal law, Carrillo is entitled to qualified immunity as to this claim as well.

Additionally, as noted in the Court's analysis of the motions for summary judgment *infra*, there are other defects related to Plaintiffs' Section 1985 claim, not addressed by Carrillo in her motion.  The Fifth Circuit has held that the only conspiracies actionable under Section 1985(3) are those motivated by racial animus.  *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019).  Plaintiffs have not alleged that the conspiracy to terminate their benefits in the instant case was racially motivated.  This claim therefore also fails as a matter of law.

### iv.    Conspiracy to Violate the DTPA

Plaintiffs' final remaining claim against Carrillo is a conspiracy to violate the DTPA.  The DTPA grants consumers a cause of action against "any person" for false, misleading, or deceptive acts or practices.  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see also* Tex. Bus. & Com Code Ann. § 17.50(a)(1) (allowing consumer to maintain a civil action

against any "person" using or employing a false, misleading, or deceptive act or practice as defined by statute). Plaintiffs contend that Carrillo made misrepresentations about Mr. Payne's Facebook post in violation of the DTPA.

Carrillo claims that she is immune from liability for Plaintiffs' DTPA claim as well. Under Texas law, official immunity inures to all government employees who perform discretionary duties in good faith and within their authority. *Crostley v. Lamar County, Tex.*, 717 F.3d 410, 424 (5th Cir. 2013); *DeWitt v. Harris County*, 904 S.W.2d 650, 652 (Tex. 1995). The elements of the defense of official immunity are "(1) the performance of discretionary duties (2) that are within the scope of the employees' authority, (3) provided that the employee acts in good faith." *Crostley*, 717 F.3d at 424 (quoting *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002)). "Texas law of official immunity is substantially the same as federal qualified immunity." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). "An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the facts justified his conduct." *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656–57 (Tex. 1994)). Like the federal standard from which it is derived, Texas's good-faith test is one of objective legal reasonableness. *Id.* The defendant claiming official immunity bears the burden of proving all elements of the defense. *Chambers*, 883 S.W.2d at 653. To survive a motion to dismiss, however, a plaintiff must merely plead specific facts, that, if proved, would overcome an official's immunity defense. *Murray v. Earle*, 334 Fed. App'x 602, 608 (5th Cir. 2009).

Plaintiffs allege that Carrillo was, at all times relevant to this lawsuit, acting within the scope of her employment. (First Am. Pet. [#1-8] at ¶¶ 26.) Carrillo's motion to dismiss argues that because she was acting as an agent of SAHA, and SAHA has already been dismissed from

this suit based on official immunity, she is entitled to the same immunity, and this claim should be dismissed.  Carrillo's motion does not address Texas's good-faith test in the specific context of this claim, but she does repeatedly argue that the pleadings establish the good faith reasonableness of her actions in responding to a threat of violence by Mr. Payne on social media. Plaintiffs have not responded to Carrillo's motion for judgment on the pleadings seeking dismissal of their claim under the DTPA, and the Court finds that the Facebook post by Mr. Payne, as described by Plaintiffs themselves in their pleadings, justified Carrillo contacting her superiors or the SAPD and forecloses any theory of bad faith on her part.  The Court should therefore dismiss Plaintiffs' DTPA claim against Carrillo.

### III.  Motions for Summary Judgment

Defendants Kasberg, Morales, and Purkiss, sued in their individual capacities as officers of the SAPD (hereinafter "SAPD Officer Defendants"), and Defendants the City of San Antonio, the SAPD, Police Chief McManus, and Mayor Nirenberg, sued in their official capacities (hereinafter "City Defendants"), seek summary judgment on all of Plaintiffs' claims.  For the reasons that follow, the motions should be granted.

### A.    Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Fifth Circuit has held that a plaintiff's *pro se* status does not relieve her of the duty to properly support a response to motions for summary judgment. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). The Rules of Civil Procedure and this Court's Local Rules are sufficient to apprise a *pro se* plaintiff of the potential consequences of failing to submit

competent summary judgment proof, such as opposing declarations or affidavits; no additional particularized notice is required. *Id.*

## B.   Evidentiary Disputes

In support of their motion for summary judgment, the SAPD Officers have submitted their sworn declarations, as well as the sworn declarations of Timothy Brooks, an officer with the Internal Affairs Unit of SAPD, and Albert Ortiz, a former SAPD police officer and expert retained by Defendants.  (Kasberg Decl. [#98-2]; Morales Decl. [#98-3]; Purkiss Decl. [#98-4]; Brooks Decl. [#98-5]; Ortiz Decl. [#98-6].)  In response, Plaintiffs submit two letters Mr. Payne sent to SAPD's Internal Affairs Department after the search and seizure at issue in this case; SAHA's "3-day Notice to Vacate," terminating Plaintiffs' lease; and the SAPD Police Report from the day of the search of Plaintiffs' apartment.  (Payne Ltrs. [#101] at 38–42; SAHA Notice [#101] at 43; Police Report [#101] at 44.)  Plaintiffs did not submit sworn declarations or affidavits in support of their claims.

The only evidence the City Defendants provide in support of their motion for summary judgment is the declaration of Ortiz.  As with their response to the motion filed by the SAPD Officers, Plaintiffs did not submit declarations or any other evidence with their response to this motion, attaching only a copy of the Ortiz declaration and a Court Order from March 18, 2019, signed by Judge Rodriguez, remanding this case to state court due to certain defects with the first attempt at removal.  (Remand Order [#102] at 20–25.)  Judge Rodriguez's Order does not address any of the issues raised by the City Defendants' summary judgment motion.

Both Plaintiffs and the SAPD Officer Defendants raise evidentiary challenges to the summary judgment record, which the undersigned will address prior to the merits of the motions.

i.     Plaintiffs' Motions to Strike

Plaintiffs ask the Court to strike highlighted portions of the five declarations submitted by Defendants, arguing that they contain perjury, are based on a lack of personal knowledge of the events described in the declarations, and contain inadmissible hearsay.  Plaintiffs also contend that they have never engaged in any communication with Lt. Brooks, and therefore Lt. Brooks's declaration describing conversations with Plaintiffs is false.   Plaintiffs argue the Ortiz Declaration should be stricken under Federal Rule of Evidence 701 as improper lay witness testimony.  The Court will deny Plaintiffs' motion to strike.

Although Plaintiffs reference highlighted portions of the declarations and attach the declarations to their motion to strike, it does not appear that any portion of Kasberg's or Ortiz's declaration has been highlighted.  Plaintiffs have, however, highlighted almost the entirety of Morales's declaration, as well as several sentences of Purkiss's declaration, and a few words of Brooks's declaration.  The Court has reviewed the highlighted portions of the declarations, as well as the declarations in their entirety, and conclude that they are based on the personal knowledge of the declarants, do not contain inadmissible hearsay, and are not inadmissible for any other reason.

An out-of-court statement offered to prove the truth of the matter asserted is hearsay, and, subject to certain exceptions, is not admissible as evidence.  *See* Fed. R. Evid. 801–05.  None of the statements in the declarations of the SAPD Officer Defendants and Lt. Brook that were relied on by this Court in ruling on the summary judgment motions constitute hearsay, or if they do, they are admissible under exceptions to the hearsay rule.   For example, the SAPD Officer Defendants' declarations each recount what the SAPD Officers were told by apartment management when they arrived at the Plaintiffs' apartment complex on the evening of the

incident in question.  (*See, e.g.*, Morales Decl. [#101] at 18 ("When we arrived at the apartment complex the persons in the management office told us Mr. Payne had posted what they perceived to be threatening posts on his Facebook page . . . [and] had also left a voicemail with the apartment management in which he called a SAHA representative 'bitch,' as he voiced his dissatisfaction with the outcome of recent litigation he had with the apartment complex.")  The SAPD Officers also relay that Mr. Payne stated that he had been diagnosed with schizoaffective disorder; had been in long-term litigation with the housing authority regarding his property; made several admissions regarding the threatening phone calls he placed to SAHA and apartment management; agreed to voluntarily accompany the officers to the Center for Health Care Services; and identified the location of the weapon in the apartment.  (*See, e.g.*, *id.*)  Lt. Brooks recounts in his declaration a meeting he had with Plaintiffs at SAPD's Internal Affairs Department on March 2, 2018, regarding the items seized from their apartment, and recounts numerous statements made by Mr. Payne during the meeting about the search and seizure. (Brooks Decl. [#] at 27).

All of the statements attributed to Mr. Payne in the various declarations are not hearsay, because they are a statement offered against a party opponent.  *See* Fed. R. Evid. 801(d)(2).  Rule 801 categorizes certain out-of-court statements as non-hearsay, including statements offered against an opposing party that were made by the opposing party.  *Id.*  The SAPD Officer Defendants are therefore permitted under the Federal Rules of Evidence to present the Court with declarations containing the statements Mr. Payne, as a party opponent, made to them and Lt. Brooks surrounding the incidents giving rise to this suit.  If Plaintiffs wish to contest the veracity of these statements, they could have submitted their own sworn declarations containing their version of the events at issue.  Plaintiffs, however, failed to do so.

The only statements in the declarations that cannot be attributed to a party opponent are the statements apartment management made to the SAPD Officer Defendants upon their arrival to the apartment complex that evening.  These statements are not being offered for the truth of the matter asserted and are therefore also not hearsay.  The statements have only been considered by the Court as the basis for the SAPD Officer Defendants' visit to Plaintiffs' apartment and not as evidence of what Mr. Payne did or did not actually post on his social media or say in any voicemails left for apartment management.

Regarding the declaration of Ortiz, the Court rejects Plaintiffs' challenge to this declaration under Rule 701.  Rule 701 governs opinion testimony by lay witnesses, i.e., witness's not testifying as an expert.  *See* Fed. R. Evid. 701.  Ortiz is a retained expert, and therefore Rule 702—not 701—governs the admissibility of his testimony.  Plaintiffs have not moved to exclude Ortiz as an expert under Rule 702 for lack of qualification or unreliability of his opinions.  Plaintiffs do reference Rule 703, however, arguing that Ortiz's declaration contains opinions on the conduct of the SAPD Officer Defendants that are not based on his personal observations and are inadmissible hearsay.  *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.")  Ortiz's declaration opines on the reasonableness of the SAPD Officer Defendants' conduct during the search and seizure at issue in this case.  In doing so, Ortiz summarizes the documents he reviewed in forming his opinion, such as the declarations discussed herein, the police report, and other items not in the summary judgment record.  Ortiz, as an expert, is entitled to summarize the record.  Any statements he recounts attributable to Mr. Payne are not hearsay for the same reasons already discussed—they are admissible statements of a party opponent under Rule 801.

ii.     SAPD Officer Defendants' Objections

The SAPD Officer Defendants object to the two letters from Mr. Payne to SAPD's Internal Affairs Department, attached to Plaintiffs' response, arguing that they are unsworn and self-serving and therefore insufficient to defeat a motion for summary judgment.  Defendants also ask the Court to refrain from construing Plaintiffs' pleadings as summary judgment proof, as Plaintiffs' First Amended Petition and More Definite Statement are not verified.

Pleadings are not competent summary judgment unless they are verified as true and correct under penalty of perjury and thereby comport with the requirements of Rule 56 of the Federal Rules of Civil Procedure.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("King's second amended complaint is the only effective complaint, and because it is unverified, it does not constitute competent summary judgment evidence.").  Plaintiffs' pleadings are unsworn, and therefore do not constitute competent summary judgment evidence.

The letters submitted by Plaintiffs are also not competent summary judgment evidence. Under the 2010 amendments to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Plaintiffs do not respond to the SAPD Officer Defendants' objections to their summary judgment evidence.  Regardless, it is not this Court's "duty to examine whether and how [Mr. Payne's unsworn letters] might be reduced to acceptable form by the time of trial." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991).  Accordingly, insofar as Plaintiffs are submitting the letters in an attempt to dispute the version of events set forth in Defendants' sworn declarations, they are not proper summary judgment proof.  The Court will therefore sustain Defendants' objections and has not considered Plaintiffs' unsworn pleadings or

the unsworn letters authored by Mr. Payne in evaluating the merits of Defendants' summary judgment motion.

## C.      Summary Judgment Record

Based on these evidentiary rulings, the summary judgment record establishes the following undisputed facts.  At the time of the incidents underlying this lawsuit, the SAPD Officer Defendants were designated as Mental Health Officers with the Mental Health Unit of the SAPD.  (Kasberg Decl. [#98-2] at 1; Purkiss Decl. [#98-3] at 1; Morales Decl. [#98-4] at 1.) The Officers were dispatched at approximately 6:00 p.m. on February 28, 2018, to Plaintiffs' apartment to conduct a mental health assessment of Mr. Payne, after SAPD was alerted that Mr. Payne posted some unusual statements on social media and left a threatening voicemail with apartment management.  (Kasberg Decl. [#98-2] at 1; Purkiss Decl. [#98-3] at 1; Morales Decl. [#98-4] at 1; Police Report [#101] at 44.)

When the SAPD Officers arrived at Plaintiffs' apartment, Mr. Payne welcomed them inside, and the mental health assessment was conducted with Mr. Payne's consent.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2; Police Report [#101] at 44.)  At no time did Plaintiffs say or do anything to indicate they wanted the officers to leave the apartment.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.) During the mental health assessment, Mr. Payne was polite and provided information about the social media postings and admitted to being diagnosed with schizoaffective disorder for which he takes medication.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)  Mr. Payne also indicated that he had been in long-term litigation with SAHA regarding the property.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)  Mr. Payne acknowledged that the voicemail he left was inappropriate and

conveyed that he did not desire to harm anyone.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)

When asked about whether there were any weapons in the apartment, Mr. Payne stated that there was a gun in the apartment and explained where it was located.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)   Detective Morales took possession of the weapon, and the handgun was placed in the SAPD's property room until Mr. Payne could be cleared by his physician and a determination could be made that he was stable enough to be in possession of the firearm.  (Police Report [#101] at 44; Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)   At no time that night did Plaintiffs indicate that they wanted the gun returned or that the gun had been taken without their consent. (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)

When told that a voluntary visit to the Center for Health Care Services would be a sign of good faith, Mr. Payne stated he was willing to voluntarily accompany the SAPD Officers to the Center, and that he, in fact, had an ongoing treatment relationship there and would be receptive to receiving further services.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)  The SAPD Officers took Mr. Payne to the Center for Health Care Services that evening, where they completed an application for his emergency detention.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)  At no time did Mr. Payne indicate he was no longer willing to voluntarily go to the Center for Health Care Services. (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)

The SAPD Officers arranged for Ms. Payne to be taken from the apartment to her Bible Study and to be returned to the apartment that night.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)  They also arranged to get Ms. Payne to her doctor's

appointment the following morning.  (Kasberg Decl. [#98-2] at 2; Purkiss Decl. [#98-3] at 2; Morales Decl. [#98-4] at 2.)

The SAPD Officer Defendants had no further involvement in his case after they left Plaintiffs' apartment that night.  (Kasberg Decl. [#98-2] at 1; Morales Decl. [#98-3] at 1; Purkiss Decl. [#98-4] at 1.)  They did not speak to any SAHA or Midcrown personnel regarding Mr. Payne and did not participate in any way in the decision to evict Plaintiffs.  (Kasberg Decl. [#98-2] at 3; Morales Decl. [#98-3] at 3; Purkiss Decl. [#98-4] at 3.)

On March 2, 2018, several days later, Plaintiffs went to the SAPD's Internal Affairs Unit and met with then Lieutenant Timothy Brooks.  (Brooks Decl. [#98-5] at 1.)  Mr. Payne told Lt. Brooks that the police had not returned his mother's gun and that he wanted it back.  (*Id.*)  Mr. Payne relayed that the officers were kind and professional in explaining the reason for the emergency detention and that the voluntary treatment he received was beneficial for his welfare.  (*Id.* at 1–2.)  Mr. Payne also relayed that he believed the SAPD Officers knew about the gun because of the photos he posted of the gun on his Facebook page.  (*Id.* at 2.)  Lt. Brooks told Mr. Payne that he would look into the status of the gun and provide him with the process to get it returned to his mother.  (*Id.*)

On March 20, 2018, SAHA sent Plaintiffs a notice demanding possession of Plaintiffs' apartment and terminating Plaintiffs' lease, citing various breaches of the lease agreement. (SAHA Notice [#101] at 43.)   The Notice states that the lease termination is due to a "disturbance" on October 13, 2017; two profane, disturbing, and threatening voice messages on a SAHA representative's phone on December 8, 2017; social media posts containing terroristic statements towards government agencies on February 14 and 17, 2018; and a third threatening voicemail on a SAHA representative's phone on February 27, 2018.  (*Id.*)  The Notice informs

Plaintiffs that they do not have a right to a hearing for the termination under SAHA's grievance procedures in light of the "substantial breach" of their public housing contract. (*Id.*)

The declaration of Ortiz summarizes the reviewed documents, including the declarations of the SAPD Officer Defendants discussed at length in conjunction with their motion for summary judgment, and addresses Plaintiffs' allegations that the City Defendants failed to properly train and supervise the SAPD Officer Defendants. (Ortiz Decl. [#99] at 11–19.) Ortiz worked for SAPD for 33 years and held every rank in the Department before retiring as Chief of Police in 2006. (*Id.* at 11.) He holds a Master's Degree in Criminal Justice from Texas State University. (*Id.* at 12.) Ortiz's declaration states that his review of the training files of the SAPD Officer Defendants indicate that all three officers were licensed police officers and had received the training required to be in good standing with SAPD. (*Id.* at 16.) The San Antonio Police Academy is authorized by the Texas Commission on Law Enforcement ("TCOLE") to provide basic training to police cadets and ongoing training to veteran officers. (*Id.*) TCOLE requires 618 hours of instruction for a candidate to obtain the Basic Peace Officer Certification and provides 650 additional hours of training in law enforcement related subjects. (*Id.*) TCOLE also requires 40 hours of in-service training every two years, but SAPD requires 40 hours of continuing education and training every year. (*Id.*) Each SAPD Officer Defendant was also a certified Mental Health Officers and had received over 50 hours of Crisis Intervention Training ("CIT"), including 40 hours of advanced CIT. (*Id.*)

In terms of supervision, SAPD utilizes a first line supervisor position (sergeant) for every patrol section of the City. (*Id.* at 18.) Supervisors are sent to Supervisors School, which is specifically designed to teach them their supervisory responsibilities. (*Id.*) A sergeant is

assigned in the field with his or her patrol officers and monitors their activities for compliance with the polices of SAPD.  (*Id.*)

Based on his knowledge and experience, and a review of the files of the SAPD Officer Defendants, Ortiz opines that the City Defendants provided sufficient and adequate training to all SAPD officers, including the SAPD Officer Defendants Kasberg, Purkiss, and Morales.  (*Id.*) Ortiz further opines that the actions taken to the SAPD Officer Defendants to effect Mr. Payne's emergency detention and temporary seizure of Ms. Payne's pistol, as stated in their own declarations and the police report, comport with their training and the policies and procedures of the City and SAPD.  (*Id.* at 17.)   Ortiz also found that at all times during the incident made the basis of this lawsuit that the SAPD Officer Defendants were properly and sufficiently supervised. (*Id.* at 18.)  Finally, Ortiz states that there is nothing in the record that would indicate that Mayor Nirenberg or Police Chief McManus were aware of the incident made the basis of this lawsuit prior to or immediately after the SAPD Officer Defendants responded to Plaintiffs' residence for Mr. Payne's mental health evaluation.  (*Id.*)  The SAPD Officer Defendants responded to what in Ortiz's opinion was a routine call and discharged their duties at their level without requesting any assistance, even from their immediate supervisor.  (*Id.*)  It is Ortiz's opinion that the Mayor and the Police Chief had no knowledge of the problems Plaintiffs were experiencing, the fact that SAPD had been summoned, or the actions of the SAPD Officer Defendants.  (*Id.*)

**D.    Analysis**

The motions of the SAPD Officer Defendants and the City Defendants should be granted. The SAPD, Chief McManus, and Mayor Nirenberg are entitled to summary judgment because the SAPD is not a jural entity capable of being sued and Plaintiffs' official-capacity claims against McManus and Nirenberg are duplicative of their claims against the City.  The SAPD

Officers are entitled to qualified immunity as to Plaintiffs' Section 1983 claims, and Plaintiffs have failed to allege a policy or custom of the City that could subject it to municipal liability for any of the alleged misconduct underlying this case.  Plaintiffs' remaining claims fail as a matter of law for the reasons cited herein.

       i.     <u>The SAPD is not a proper Defendant.</u>

The SAPD is not a proper party to this suit because it is not an independent legal entity capable of being sued.  The capacity to be sued is governed by the law of the state where the court is located.  Fed. R. Civ. P. 17(b)(3).  In order to sue a city department, Texas law requires that the department "enjoy a separate legal existence," meaning that it must be a "separate and distinct corporate entity" under Texas law.  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted).  If the City itself has not granted the agency at issue jural authority to be sued, it may not sue or be sued.  *Id.*

The City created the SAPD as a department of the city government.  *Gehring v. San Antonio Police Dep't*, No. SA:14-CV-545-DAE, 2015 WL 225064, at *2 (W.D. Tex. Jan. 15, 2015) (citing San Antonio Charter, art. V, § 50(3)).  However, the City reserved to itself the power to sue and be sued.  San Antonio Charter art. I, § 3, par. 1.  *See also Lone Star Chapter Paralyzed Veterans of Am. v. City of San Antonio*, No. SA-10-CV-0316-XR, 2010 WL 3155243, at *1 (W.D. Tex. Aug. 5, 2010) (noting that "San Antonio created the police department as a department of the city government . . .  [but] reserved to itself the general powers of a home-rule city" with "all municipal powers," including a specific grant to "sue and be sued.").  Because SAPD lacks jural authority to sue and be sued, it is entitled to summary judgment on Plaintiffs' claims.

ii.   <u>Mayor Nirenberg and Chief McManus should be awarded summary judgment on Plaintiffs' official-capacity claims because the claims are duplicative of Plaintiffs' claims against the City.</u>

Plaintiffs sue Mayor Nirenberg and Chief McManus in their official capacities alone. Plaintiffs' pleadings do not contain any allegations of the personal involvement of the Mayor or Police Chief in any of the incidents at issue in this suit.  The only references to these Defendants are to their status as employees of the City, i.e., in their official capacities.

An official-capacity suit is simply another way of pleading an action against an entity of which an officer is an agent, here the City.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  Official-capacity suits should be treated as suits against the government entity, and Plaintiffs' claims against Mayor Nirenberg and Chief McManus are therefore redundant and duplicative of their claims against the City.  *Lewis v. Pugh*, 289 Fed. App'x 767, 771 (5th Cir. 2008).  Mayor Nirenberg and Chief McManus are therefore also entitled to summary judgment on Plaintiffs' claims.

iii.   <u>The SAPD Officer Defendants are entitled to qualified immunity on Plaintiffs' Section 1983 claims.</u>

Plaintiffs assert various claims against all Defendants under Section 1983—wrongful eviction, illegal search and seizure, and a violation of procedural due process.[1]  The SAPD Officer Defendants assert qualified immunity as a defense to these claims.  Because Plaintiffs have failed to rebut the defense with competent summary judgment evidence of a clearly established violation of federal law, the Officers are entitled to qualified immunity and summary judgment on these claims.

---

[1] As noted *supra*, Plaintiffs also reference Section 1983 in connection with their claim of disability discrimination, but the Fifth Circuit has held that claims of disability discrimination cannot be enforced pursuant to Section 1983 because Congress has created a "specific comprehensive internal enforcement mechanism to protect the rights of the disabled" through the ADA and the Rehabilitation Act.  *Lollar*, 196 F.3d at 609–10.

**Wrongful Eviction/Due Process Violation.**   It is unclear whether Plaintiffs are attempting to sue any of the SAPD Officers for wrongful eviction or a due process violation related to the termination of public housing benefits, but insofar as they are, the evidence before the Court establishes that these Defendants did not commit any wrongful act related to Plaintiffs' eviction that could subject them to liability for either of these claims.   Defendants' undisputed declarations state that the SAPD Officers visited Plaintiffs' apartment on February 28, 2018, to complete a mental health assessment of Mr. Payne but had no further involvement in his case after they left his apartment that night.   (Kasberg Decl. [#98-2] at 1; Morales Decl. [#98-3] at 1; Purkiss Decl. [#98-4] at 1.)   The declarations further state that the SAPD Officers did not speak to any SAHA or Midcrown personnel regarding Mr. Payne and did not participate in any way in the decision to evict Plaintiffs.   (Kasberg Decl. [#98-2] at 3; Morales Decl. [#98-3] at 3; Purkiss Decl. [#98-4] at 3.)   Finally, Ortiz's declaration also states that "[i]t is the policy of the [SAPD] that their officers are not to get involved in civil matters except when they are summoned in order to prevent a breach of peace or injuries" and that "there is no evidence in the record of this case that any SAPD officers were involved in getting the Plaintiffs evicted from their apartment."   (Ortiz Decl. [#98-6] at 5.)

Plaintiffs' response to the SAPD Officers' motion for summary judgment does not address their 1983 claims alleging wrongful eviction and violation of due process.   The response focuses solely on Plaintiffs' claim that the SAPD Officers subjected them to an illegal search and seizure.   Nor do Plaintiffs offer any evidence to contradict the portions of the declarations cited above, which stand for the proposition that the SAPD Officers were not involved in Plaintiffs' eviction or the decision to terminate their public housing benefits.   Plaintiffs have therefore failed to satisfy their burden to rebut the qualified immunity defense of the SAPD Officers as to

Plaintiffs' Section 1983 wrongful eviction and due process claims.  The SAPD Officers are entitled to summary judgment on these claims.

**Illegal Search and Seizure.**   Plaintiffs' remaining Section 1983 claim asserts that Defendants subjected them to an unreasonable and warrantless search and seizure, subjected Mr. Payne to an unreasonable psychiatric detention, and wrongfully seized Ms. Payne's Glock handgun and ammunition, in violation of the Fourth Amendment.  (First Am. Pet. [#12] at ¶¶ 11, 17–18, 44, 52, 166–67, 185.)

The SAPD Police Report dated February 28, 2018, and completed by Detective Morales is consistent with the SAPD Officers' declarations, all of which establish that the Officers were welcomed into Plaintiffs' apartment and that Plaintiff was cooperative and provided details about the social media posts consistent with the content, shared his schizoaffective disorder diagnosis freely, showed remorse for the voicemail and making the apartment staff uncomfortable, voluntarily identified the location of the handgun, and agreed to receive services for his anxiety at the Center for Health Care Services that evening.  (Police Report [#101] at 44.)

It is well established that a search and seizure authorized by consent is constitutionally valid under the Fourth Amendment.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "The touchstone of the Fourth Amendment is reasonableness," and the Supreme Court has long approved consensual searches "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so."  *Florida v. Jiminez*, 500 U.S. 248, 250–51 (1991).   "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  *Id.* at 251.  This Court analyzes the following six factors to determine whether consent to a search was voluntarily

given: (1) the voluntariness of the suspect's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the suspect's cooperation with the police; (4) the suspect's awareness of his right to refuse to consent; (5) the suspect's education and intelligence; and (6) the suspect's belief that no incriminating evidence will be found. *United States v. Solis*, 299 F.3d 420, 436 & n.21 (5th Cir. 2002).

Plaintiffs concede that the mental health assessment conducted on February 28, 2018 began as a consensual inquiry but argue in their response to Defendants' motion for summary judgment that it escalated into an investigatory procedure employing unreasonable interrogation tactics and coercion.  (Pls.' Response [#101] at 4.)  Plaintiffs state that the SAPD Officers threatened Mr. Payne by telling him that Carrillo was initiating criminal proceedings against him and that he must submit to psychiatric detention to avoid criminal prosecution.  (*Id.*)  Yet Plaintiffs have not submitted any competent summary judgment evidence in support of these allegations, and the Court is left with only their unsworn pleadings and arguments, which are insufficient to defeat Defendants' qualified immunity defense.  Moreover, even if the Court were to consider Plaintiffs' pleadings or arguments in their response as competent summary judgment evidence, nowhere do these filings state that Plaintiffs withdrew their consent to the search of the apartment, the seizure of the handgun, or Mr. Payne's psychiatric detention.

In summary, the undisputed summary judgment evidence establishes that the search and seizures at issue were consensual, and the record does not support Plaintiffs' allegations of unlawful coercion or the withdrawal of their consent.  On this record, it would have been objectively reasonable for all three SAPD Officers to believe they had the Plaintiffs' consent to be in the apartment, to seize the handgun and ammunition, and to transport Mr. Payne to the Center for Health Care Services for mental health treatment.  Plaintiffs have failed to satisfy their

burden to rebut Defendants' qualified immunity defense by demonstrating a clearly established violation of federal law. The SAPD Defendants are entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim.[2]

      iv.    <u>Plaintiffs have failed to allege a policy or custom that could subject the City to municipal liability under Section 1983.</u>

Under Section 1983, municipalities and other such governmental units are considered "persons" subject to liability. *Monell*, 436 U.S. at 691 (local government entities are persons subject to suit under Section 1983); *de la O v. Hous. Auth. of the City of El Paso*, 417 F.3d 495, 503 (5th Cir. 2005) (claims against municipal housing authority treated as claims against municipality itself), *abrogated on other grounds by Reagan Nat'l Advertising of Austin, Inc. v. City of Austin*, 972 F.3d 696, 703 & n.3 (5th Cir. 2020). "By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of foreign law—abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Owen v. City of Indep., Mo.*, 445 U.S. 622, 647–48 (1980).

However, only an official policy or custom of the City could expose it to liability for a violation of Plaintiff's constitutional rights; *respondeat superior* liability for the acts of municipal employees is not available. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Municipal

---

[2] The SAPD Officer Defendants also address Plaintiffs' reference to various provisions of the Texas Constitution with respect to their illegal search and seizure claim. Insofar as Plaintiffs are attempting to bring separate claims under the Texas Constitution, the SAPD Defendants are entitled to summary judgment on these claims as well, as there is no basis for a private cause of action for monetary damages under Sections 3a and 9 of Article I of the Texas Constitution, the sections cited by Plaintiffs in their Amended Petition. *Mitchell v. Amarillo Hosp. Dist.*, 855 S.W.2d 857, 863 (Tex. App.—Amarillo 1993, pet. denied); *Vincent v. W. Tex. State Univ.*, 895 S.W.2d 469, 475 (Tex. App.—Amarillo 1995, no pet.).

liability under 42 U.S.C. § 1983 therefore requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.

The undersigned has already determined that Plaintiffs' have failed to establish a violation of any constitutional right based on any of the events underlying this suit.  But even if Plaintiffs could establish a constitutional violation, they have not produced any evidence that the City enacted a policy that was the moving force behind any such violation or had a pattern or practice of similar evictions to subject the City to Section 1983 liability.  The summary judgment record establishes that the City has a policy to train its police officers well beyond what is required under TCOLE and that the SAPD Officer Defendants received extensive training for their basic peace officer licensure and additional training as certified Mental Health Officers. (Ortiz Decl. [#99] at 16.)  There is no evidence in the summary judgment record of any deficiency in the training, policies, or supervision of the SAPD Officer Defendants that could have been the moving force behind any constitutional violation.  The City is entitled to summary judgment on Plaintiffs' Section 1983 claims.

v.      Plaintiffs' disability discrimination claim fails as a matter of law.

Count III of Plaintiffs' Petition asserts a cause of action for disability discrimination and the failure to accommodate Mr. Payne's mental disability, alleging that SAHA treated him less favorably than other non-disabled tenants.  Plaintiffs only reference SAHA in relation to this claim, not the SAPD Officer Defendants or the City Defendants.  (First Am. Pet. [#12] at ¶¶ 121–126.)  The Court has already identified the pleading defects associated with this claim, namely Plaintiffs' failure to sufficiently identify and describe the disability at issue, but Plaintiffs have also failed to provide the Court with any summary judgment evidence that the SAPD

Officer Defendants or the City Defendants engaged in disability discrimination or failed to accommodate Mr. Payne's alleged disability.  This claim fails as a matter of law, and both sets of Defendants are entitled to summary judgment.

vi.    Plaintiffs' claim of intentional infliction of emotional distress fails as a matter of law.

Plaintiffs claim that all Defendants subjected him to emotional distress.  However, the tort of intentional infliction of emotional distress is a gap-filler tort, which allows recovery only in those rare instances in which there is no other theory of redress.  *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  Where the gravamen of a complaint concerns the perceived violation of a constitutional right, as here, a separate cause of action for intentional infliction of emotional distress is not available.  *Id.*  The SAPD Officer Defendants and the City Defendants are therefore entitled to summary judgment on this claim.

vii.   Plaintiffs' claim of civil conspiracy under Section 1985 fails as a matter of law.

Plaintiffs allege that Defendants engaged in a conspiracy to violate their constitutional rights in violation of Section 1985 through the termination of their public housing benefits and their eviction.  42 U.S.C. § 1985(3).  A plaintiff suing under Section 1985 must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *Angel*, 717 Fed. App'x 372, 378–79.  As stated *supra*, the Fifth Circuit has held that the only conspiracies actionable under Section 1985(3) are those motivated by racial animus.  *Cantu*, 933 F.3d at 419.  Plaintiffs have not produced any competent summary judgment evidence that the alleged conspiracy to terminate their benefits in the instant

case was racially motivated. Both sets of Defendants are entitled to summary judgment on this claim.

   viii.   Plaintiffs' Section 1986 fails as a matter of law.

Section 1986 prohibits neglecting to prevent a conspiracy that interferes with civil rights. 42 U.S.C. § 1986. Plaintiffs' pleadings regarding this cause of action focus only on the City. (*See* First Am. Pet. [#1-8] at ¶ 173–75.) This claim also fails as a matter of law. Claims under Section 1986 are derivative of a viable claim of civil conspiracy under Section 1986. *Hamilton v. Chaffin*, 506 F.2d 904, 914 (5th Cir. 1975) (referring to Section 1986 as an "interrelated, dependent cause of action" that fails without a cognizable Section 1985 claim). Plaintiff's inability to prove a claim under Section 1985(3) precludes any recovery by Plaintiffs under Section 1986. Both sets of Defendants are entitled to summary judgment on this claim.

   ix.   Defendants are entitled to summary judgment on Plaintiffs' claim under the DTPA, as the City cannot be sued under this statute and Plaintiffs fail to provide any evidence against the Officers as to this claim.

Again, the DTPA grants consumers a cause of action against "any person" for false, misleading, or deceptive acts or practices. *Amstadt*, 919 S.W.2d at 649; *see also* Tex. Bus. & Com Code Ann. § 17.50(a)(1). The Texas Legislature did not include governmental entities like the City in the DTPA's definition of "person." *City of Wylie v. Taylor*, 362 S.W.3d 855, 864 (Tex. App.—Dallas 2012, no pet.) (citing Tex. Bus. & Com. Code § 17.45(3)). Plaintiffs therefore cannot maintain a cause of action under the DTPA against the City. Moreover, the DTPA also does not include an express waiver of sovereign immunity. *Prof'l Res. Plus v. Univ. of Tex., Austin*, No. 03-10-00524-CV, 2011 WL 749352, at *1 (Tex. App.—Austin Mar. 4, 2011, no pet.). Therefore, the City is entitled to summary judgment on any claims asserted against it under the DTPA.

As to the SAPD Officer Defendants, the allegations surrounding this cause of action in Plaintiffs' Amended Petition also do not include any assertions regarding the conduct of the Officers.  This claim focuses on the termination of Plaintiffs' lease based on false and misleading statements by SAHA.  (First Am. Pet. [#1-8] at ¶ 191.)   Because there are no allegations and no evidence to support any allegations against the SAPD Officer Defendants as to this claim, they are also entitled to summary judgment.

     x.     <u>Plaintiffs' claim of negligence fails as a matter of law because the City enjoys immunity as to this claim and the Texas Tort Claims Act's election-of-remedies doctrine bars Plaintiffs from suing the SAPD Officer Defendants in tort where they have elected to sue the City.</u>

Plaintiffs sue all Defendants for negligence.  Sovereign immunity shields a state from suit unless it expressly consents to being sued.  *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citations omitted).  Under Texas law, governmental immunity affords similar protection to political subdivisions of the state, like the City.  *Alcala v. Tex. Webb Cty.*, 620 F. Supp. 2d 795, 801–02 (S.D. Tex. 2009) (citing *Sykes*, 136 S.W.3d at 638).

Under Texas law, a governmental unit is immune from tort liability unless the Legislature has waived immunity by statute through clear and unambiguous language.  *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998); Tex. Gov't Code § 311.034 ("a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language").  The Texas Legislature waived governmental immunity over certain tort causes of action against governmental entities through the passage of the Texas Tort Claims Act ("TTCA").  *See* Tex. Civ. Prac. & Rem. Code § 101.001, *et seq.*  Yet, the TTCA contains only a limited waiver of sovereign immunity that does not cover the state-law claims asserted by Plaintiffs.

38

The TTCA waives governmental immunity in only three general areas: "use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property." *Brown v. Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex. App.—Beaumont 1995, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 101.021).  Accordingly, the TTCA is not a basis for setting aside the immunity of the City as to Plaintiffs' negligence claim, which is unrelated to the use of motor vehicles, premises defects, or injuries caused by a condition of personal or real property.  The City Defendants are entitled to summary judgment as to this claim.

The SAPD Officer Defendants are also entitled to summary judgment on Plaintiffs' negligence claim.  The Texas Tort Claims Act provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."  Tex. Civ. Prac. & Rem. Code § 101.106(a).  "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  *Id.* at § 101.106(e).  Because Plaintiffs have sued the City of San Antonio and the SAPD for negligence, and all of the allegations against the SAPD Officer Defendants involve their employment with the SAPD, Plaintiffs have made the irrevocable election to proceed against the SAPD and its employees in an official capacity alone.  The Court should grant summary judgment to the SAPD Officer Defendants under the Texas Tort Claims Act's election-of-remedies doctrine.

### IV.  Conclusion, Recommendation, and Orders

Having considered the motions before the Court, the responses and replies thereto, and the governing law, the undersigned recommends the following:

- Defendant Amy V. Carrillo's 12(c) Motion for Judgment on the Pleadings [#82] be **GRANTED**, such that all of Plaintiffs' remaining claims against Carrillo should be dismissed;

- Defendants William Kasberg, Shannon Purkiss, and Gerardo Morales's Motion for Summary Judgment [#98] be **GRANTED**, such that summary judgment should be awarded to Kasberg, Purkiss, and Morales as to all of Plaintiffs' claims;

- Defendants City of San Antonio, Texas, San Antonio Police Department, Ron Nirenberg, and William McManus's Motion for Summary Judgment [#99] be **GRANTED**, such that summary judgment should be awarded to the City of San Antonio, the San Antonio Police Department, Mayor Nirenberg, and Chief McManus as to all of Plaintiffs' claims.

**IT IS ALSO ORDERED** that Plaintiffs' Motion to Strike Highlighted Portions of Defendants Declarations Submitted in Support of their Motion for Summary Judgment [#101] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Highlighted Portions of Defendant's Declaration Submitted in Support of the City, Mayor, and SAPD's Motion for Summary Judgment [#102] is **DENIED**.

**IT IS FINALLY ORDERED** that the objections of Defendants to Plaintiffs' summary judgment evidence are **SUSTAINED** as set forth herein.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party

filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 4th day of February, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

41