IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DON ALBERT PAYNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED; AND GLORIA JEAN PAYNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-19-CV-00407-FB |
| *Plaintiffs,* | §<br>§ | |
| vs. | §<br>§ | |
| MIDCROWN PAVILION APARTMENTS AND AMY CARRILLO, | §<br>§<br>§ | |
| *Defendants.* | §<br>§ | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Amy V. Carrillo's First Amended and Renewed 12(c) Motion for Judgment on the Pleadings [#136] and Defendant Midcrowne[1] Senior Pavilion, LP's Motion to Dismiss for Failure to State a Claim [#138]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] The parties repeatedly misspell Midcrown Pavilion Apartment's name as "Midcrowne" throughout their briefing. The undersigned will hereinafter refer to Midcrown by the spelling used in the caption of Plaintiffs' Complaint and on Midcrown's promotional website. *See* http://www.midcrownseniorpavilion.com/ (last visited Aug. 26, 2021).

In reviewing the motions before the Court, the undersigned has also considered Plaintiffs' Responses [#139, #140, #144] and Defendant Carrillo's Reply [#145].  For the reasons that follow, the Court should **grant** Carrillo's and Midcrown's motions.

## I.  Procedural Background

The undersigned has issued multiple previous reports and recommendations in this case, which contain thorough recitations of the factual and procedural background of the parties' dispute.   The undersigned only repeats the relevant procedural history here.   Plaintiffs, proceeding *pro se*, originally filed this lawsuit in the County Court at Law No. 3 in Bexar County, Texas, on September 21, 2018.  (Case History [#1-9] at 4–9.)  While this case was still pending in state court, Plaintiffs filed their 74-page First Amended Petition, which remains the live pleading in this case.  (First Am. Pet. [#1-8] at 2–76.)

The First Amended Petition named as Defendants the City of San Antonio, Amy V. Carrillo "Individually of the San Antonio Housing Authority" ("SAHA"), and various officers of the San Antonio Police Department ("SAPD") in their individual capacities—Officer William Kasberg, Officer Shannon Purkiss, and Officer Gerardo Morales.  The Petition also mentioned SAHA itself as a Defendant, as well as Midcrown Pavilion Apartments ("Midcrown"), Mayor Ron Nirenberg, and Police Chief William McManus throughout the body of the Petition.

Plaintiffs' Amended Petition alleges that they signed a lease agreement with Midcrown, and SAHA contractually agreed to subsidize their rent under the Section 8 Program run by the U.S. Department of Housing and Urban Development ("HUD").  According to Plaintiffs, they satisfied every payment obligation under the lease, but were nonetheless evicted in retaliation for their request for a reasonable accommodation for a disability.  Plaintiffs further allege that they were subject to an unlawful warrantless search of their apartment and seizure of a firearm after

management of Midcrown alerted SAHA to a post on Mr. Payne's Facebook page that concerned firearms and ammunition.  The pleadings also contain allegations regarding the seizure of Mr. Payne's person for "psychiatric detention."

Plaintiffs' First Amended Petition asserts the following causes of action against the various Defendants:  (1) wrongful eviction/unlawful search and seizure pursuant to Section 1983; (2) due process violation pursuant to Section 1983; (3) disability discrimination and failure to accommodate; (4) intentional infliction of emotional distress; (5) civil conspiracy pursuant to 42 U.S.C. § 1985; (6) violation of Section 1986; (7) conspiracy to violate the Texas Deceptive Trade Practices Act ("DTPA"); and (8) negligence.

The record reflects that soon after removal, due to a lack of clarity in the pleadings, Midcrown filed a motion for a more definite statement to determine whether Plaintiffs in fact intended to name it as a Defendant in this suit.  The Court granted Midcrown's motion and ordered Plaintiffs to file a more definite statement to assist Midcrown and the Court in determining the nature of the allegations in this case.  Plaintiffs filed their More Definite Statement as directed, which the Court incorporates as part of the pleadings.  (More Definite Statement [#29].)  The More Definite Statement made clear that Plaintiffs intended to name Midcrown as a Defendant.

Since removal, the District Court has granted multiple dispositive motions and dismissed the majority of Defendants from this case.  (*See* Orders [#59, #128].)  The only remaining Defendants at this stage of the proceedings are Amy V. Carrillo and Midcrown.  Both Carrillo and Midcrown have now moved for dismissal of all of Plaintiffs' remaining claims.  The undersigned will address each of these motions in turn.

## II.  Carrillo's Renewed 12(c) Motion

Carrillo's renewed 12(c) motion is her third motion to dismiss filed in this case.  On March 6, 2020, the District Court granted Carrillo's first motion to dismiss in part, dismissing all but the following claims asserted by Plaintiffs in their Amended Complaint against Carrillo: wrongful eviction/unlawful search and seizure pursuant to Section 1983 (Count I); due process violation pursuant to Section 1983 (Count II); disability discrimination and failure to accommodate (Count III); civil conspiracy pursuant to Section 1985 (Count V); and conspiracy to violate the DTPA (Count VII).  (Order [#59].)

Carrillo subsequently filed a motion to dismiss under Rule 12(c).  The undersigned recommended that the District Court grant the motion, concluding that Plaintiffs failed to state a claim against Carrillo and relying in part on the fact that Plaintiffs failed to file a response in opposition to the motion.  (R&R [#116].)  Plaintiffs filed objections to the recommendation to the extent it was based on their failure to respond, arguing that they never received a copy of the motion.  Because Carrillo could not admit or deny with 100% certainty whether service was accomplished on Plaintiffs by certified or electronic mail and did not present any other evidence to support her assertion that the motion was served on Plaintiffs, the District Court rejected the undersigned's report and recommendation in part.  (Order [#128].)  The District Court denied Carrillo's motion without prejudice to re-urging or refiling the arguments for judgment as a matter of law by a renewed 12(c) motion or a motion for summary judgment within 14 days. (*Id.*)

Carrillo timely filed her renewed 12(c) motion as permitted by the District Court.  The motion is ripe for the Court's review.  Plaintiffs have filed a response in opposition to the motion

[#140], which confirms that they received a copy of the motion and there is no issue regarding service.

**A.     Legal Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Furthermore, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be

dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Twombly*, 550 U.S. at 570.

**B.      Facts Alleged Against Carrillo**

Plaintiffs' First Amended Petition and More Definite Statement together allege the following facts against Carrillo, as summarized in the undersigned's previous report and recommendation.  Carrillo is a SAHA employee responsible for assisting third-party property managers with lease negotiations, notices of lease violations, and terminating leases.  (*See* Mtn. to Dismiss [#82] at ¶ 3.)  Plaintiffs claim that SAHA entered into a contract with Midcrown to reserve certain dwellings for subsidized housing, and Plaintiffs entered into a lease with Midcrown to rent one of the subsidized apartments.  (First Am. Pet. [#1-8] at ¶ 38.)  According to Plaintiffs, during the lease term, Mr. Payne requested certain accommodations due to a disability, and SAHA failed to engage in an interactive process regarding the claimed disability and wrongfully denied the requested accommodations.  (*Id.* at ¶¶ 103–106, 122–24; More Definite Statement [#29] at 5.)  Plaintiffs do not provide any more details regarding the alleged disability or the requested accommodations in their pleadings.  Plaintiffs also allege that Mr. Payne filed an administrative complaint with HUD's Office of Fair Housing regarding the accommodation process, and the complaint was denied on the basis that his complaints were more of the landlord-tenant nature and not subject to federal fair housing laws.  (More Definite Statement [#29] at 6; HUD Ltr. [#29] at 7.)

Plaintiffs claim that after Mr. Payne filed his complaint and during the accommodation process, Carrillo retaliated against him with eviction.  (First Am. Pet. [#1-8] at ¶¶ 94, 103–106, 122–24, 134–35; More Definite Statement [#24] at 6.)   According to Plaintiffs, Carrillo improperly retrieved a post from Mr. Payne's Facebook page depicting firearms and

ammunition, falsely accused him of being a threat to other tenants and employees based on the post, terminated his Section 8 housing voucher, and conspired with SAPD to wrongfully evict him (despite his being current on his rent obligations) without affording him a hearing.  (First Am. Pet. [#1-8] at ¶¶ 50, 51, 94, 134–35, 160, 184–85.)  Plaintiffs state in their Petition that SAPD officers seized a 9mm Glock 17 and ammunition from Plaintiff's apartment as part of their investigation.  (*Id.* at 53.)

**C.     Analysis**

As already noted, the following claims remain pending against Carrillo: wrongful eviction/unlawful search and seizure pursuant to Section 1983 (Count I); due process violation pursuant to Section 1983 (Count II); disability discrimination and failure to accommodate (Count III); civil conspiracy pursuant to Section 1985 (Count V), and conspiracy to violate the DTPA (Count VII).  All of Plaintiffs' remaining claims against Carrillo should be dismissed.

i.     <u>Section 1983 Claims</u>

Plaintiffs' first and second causes of action arise under Section 1983 of the Civil Rights Act of 1964.  Section 1983 provides a cause of action against "every person" who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. 42 U.S.C. § 1983.  Plaintiffs allege that Carrillo violated their rights to procedural due process and to be free from an unlawful search and seizure in terminating their Section 8 housing voucher and evicting them from their apartment.

Carrillo moves for dismissal of Plaintiffs' Section 1983 claims based on the affirmative defense of qualified immunity.  Carrillo asserted qualified immunity in her first motion to dismiss pursuant to 12(b)(6), but the District Court denied the defense, concluding that she had not adequately explained the basis for the defense in her motion.  In doing so, the District Court

indicated that Carrillo could reassert the defense at a later stage of the proceedings by more clearly presenting the basis for her qualified immunity.  The Court should now grant Carrillo's qualified immunity defense and dismiss Plaintiffs' Section 1983 claims.

Qualified immunity shields federal and state officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts to refrain from defining clearly established law at a high level of generality. *See, e.g.*, *al-Kidd*, 563 U.S. at 742.  Rather, the inquiry must be undertaken in light of the specific factual context of the case. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  The dispositive question is "whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742.  Lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The burden is on the plaintiff to disprove a defendant's qualified-immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  To satisfy that burden in the context of a motion to dismiss (or here, a motion for judgment on the pleadings), the plaintiff

must allege facts, taken as true, which show that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Id.* This Court construes *pro se* complaints and filings more liberally than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The essence of Plaintiffs' Fourth Amendment claim is that they were subjected to a warrantless search of their apartment without probable cause and an illegal seizure of their firearm and ammunition, as well as Mr. Payne's person.  Plaintiffs also allege that they were denied procedural due process in losing their Section 8 housing benefits and suffering an eviction without first being afforded a hearing.

Carrillo argues she is entitled to qualified immunity on Plaintiffs' search and seizure claim because there are no allegations against her personally regarding the search conducted by SAPD and the seizure of Plaintiffs' Glock-17 firearm and ammunition or the seizure of Mr. Payne's person for a pscyhiatric evaluation.  Carrillo argues she is entitled to qualified immunity on Plaintiffs' due process claim because the only inference that can be made from the pleadings is that Midcrown alerted her to Mr. Payne's Facebook post, and she relayed the information to her superiors or SAPD, conduct that Carrillo argues was objectively reasonable and does not constitute a violation of due process.  Carrillo also attempts to distance herself from the decision to terminate Plaintiffs' Section 8 housing benefits and to evict them by arguing that she was not Plaintiffs' landlord, only the landlord's agent, citing to Texas landlord-tenant law.

Carrillo's amended motion for judgment on the pleadings (as did her first 12(c) motion) raises specific arguments regarding her entitlement to qualified immunity that were not raised in her original 12(b)(6) motion.  Again, the burden is on Plaintiffs to disprove a qualified-immunity defense.  *See Club Retro, L.L.C.*, 568 F.3d at 194.

9

As to the Fourth Amendment claim, the undersigned agrees with Carrillo that all of the allegations in Plaintiffs' pleadings regarding the search and seizure concern SAPD.  (*See, e.g.*, First Am. Pet. [#1-8] at ¶¶ 62–68.)  Because Plaintiffs have not alleged that Carrillo violated their constitutional rights by engaging in an unlawful search and seizure (and have not come forth in response to her motion with any arguments as to why Carrillo is implicated in this claim), Carrillo is entitled to qualified immunity on Plaintiffs' Section 1983 claim based on the Fourth Amendment.

As to Plaintiffs' due process claim, Plaintiffs' Amended Petition and More Definite Statement allege that Carrillo "ignored HUD's mandatory grievance procedures" and terminated their lease agreement under "the false hypothesis that [Mr. Payne] was guilty of breaching his lease agreement under the guise 'he engaged in criminal activity.'"  (*Id.* at ¶¶ 134–136.) Plaintiffs accuse Carrillo of terminating their Section 8 housing benefits and evicting them without a hearing.  (*Id.* at ¶ 134–35; More Definite Statement [#22] at 6.)  As the undersigned noted in the previous report and recommendation on Carrillo's 12(b)(6) motion, in some circumstances, federal courts have held that due process requires timely and adequate notice and the right to a hearing prior to eviction of public housing tenants.  *Compare Richmond Tenants Org., Inc., v. Kemp*, 956 F.2d 1300, 1307 (4th Cir. 1992) (holding, in a federal public housing case, that "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment requires the government to provide for notice and an opportunity to be heard before a tenant may be evicted") *with Colvin v. Hous. Auth. Of City of Sarasota, Fla.*, 71 F.3d 864, 867 (11th Cir. 1996) ("Congress has expressly granted Public Housing Authorities the right to deny a hearing to a tenant after a valid state court eviction that complies with basic due process.").

Although Carrillo's motion does not address the specific question of what process is due before the termination of public housing benefits, Carrillo appears to argue that exigent circumstances were present that supported SAHA's and her own actions in this case.  In her motion, Carrillo directs the Court to the portion of Plaintiffs' pleadings in which they describe the Facebook post that allegedly resulted in their eviction.  According to Plaintiffs, Mr. Payne's post depicted him holding weapons and ammunition with text stating, "[t]he Government is out to get him, and [if] that was the case, he'd like to take as many of them with him."  (First Am. Pet. [#1-8] at ¶¶ 160, 186.)

Carrillo argues her conduct in reporting the post to SAHA or SAPD was objectively reasonable.  And the undersigned concludes that Carrillo has sufficiently asserted a defense to Plaintiffs' due process claim in identifying the exigent circumstances—a threat of violence against the Government—that could have justified an eviction without a prior hearing.  To award Carrillo qualified immunity, this Court need not conclusively determine that Carrillo's alleged acts did not violate the Due Process Clause, only that they did not constitute a clearly established constitutional violation.  *See Pearson*, 555 U.S. at 236.

Although Plaintiffs have filed a response in opposition to Carrillo's motion, this response does not contain any substantive argument regarding Carrillo's qualified immunity defense or Plaintiffs' due process claim, aside from a general assertion that the Court should deny qualified immunity.  Plaintiffs have not addressed why or how it is a violation of due process to terminate Section 8 housing benefits and evict a tenant, without a prior hearing, where the tenant has made a public threat of violence, or referenced any case law clearly establishing a principle to that effect.  Because Plaintiffs have adduced nothing to rebut Carrillo's defense, they have not

satisfied their heavy burden to demonstrate a violation of clearly established law and Carrillo is entitled to qualified immunity.[2]

ii.    Disability Discrimination and Failure to Accommodate

Count III of Plaintiffs' Petition asserts a cause of action for disability discrimination. Plaintiffs allege that Mr. Payne suffers from a disability; that he requested a reasonable accommodation for his disability; that he was refused an accommodation; and that he was treated less favorably than non-disabled tenants.  (First Am. Pet. [#12] at ¶¶ 121–126.)  In conjunction with these allegations, Plaintiffs reference the Texas Fair Housing Act, the federal Fair Housing Act, the Texas Constitution, and Section 1983.

The Fifth Circuit has held that claims of disability discrimination cannot be enforced pursuant to Section 1983 because Congress has created a "specific comprehensive internal enforcement mechanism to protect the rights of the disabled" through the Americans with Disabilities Act and the Rehabilitation Act.  *Lollar v. Baker*, 196 F.3d 603, 609–10 (5th Cir. 2012).  Plaintiffs do not, however, mention the ADA in connection with their allegations.

Under the federal Fair Housing Act ("FHA"), "a public entity engages in a discriminatory practice if it refuses to make a 'reasonable accommodation' to 'rules, policies, practices or services when such accommodation may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling.'"  *Providence Behavioral Health v. Grant Rd. Pub. Util.*

---

[2]  Insofar as Plaintiffs are attempting to sue Carrillo for wrongful eviction under Texas law, this claim also fails as a matter of law.  An essential element of a claim for wrongful eviction is a landlord-tenant relationship.  *See St. Anthony's Minor Emergency Ctr., L.L.C. v. Ross Nicholson 2000 Separate Prop. Tr.*, 567 S.W.3d 792, 799 (Tex. App.—Houston [14th Dist.] 2018, no pet.).  The Texas Property Code specifically excludes a "manager or agent of the landlord" from its statutory definition of "landlord."  *See* Tex. Prop. Code § 92.001(2).  Plaintiffs have not alleged that Carrillo is the landlord, only that she was an agent of SAHA with respect to a lease entered into with Midcrown.  (Resp. [#140], at 2.)  This claim therefore fails as a matter of law based on Plaintiffs' pleadings.

*Dist.*, 902 F.3d 448, 459 (5th Cir. 2018) (quoting 42 U.S.C. § 3604(f)(3)(B)).   "Reasonable accommodation claims under the FHA and ADA both require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled."   *Id.*   The Texas Fair Housing Act ("TFHA") also makes it unlawful to "discriminate in the sale or rental of, or make unavailable or deny, a dwelling to any buyer or renter because of a disability."  Tex. Prop. Code § 301.025(a).

To state a claim for intentional discrimination based on a disability under these Acts, Plaintiffs must allege a qualifying disability; that Plaintiffs were denied the benefits of services, programs, or activities for which the public entity is responsible, or were otherwise discriminated against by Defendants; and that the discrimination was due to the disability.   *Providence Behavioral Health*, 902 F.3d at 457.  The same would be true if the Court construed Plaintiffs' claims under the ADA or Rehabilitation Acts; the essential elements to any of these claims are that the plaintiff is a "qualified individual with a disability," and that the disability was both known and not accommodated or the basis of some discriminatory act.  *See Feist v. La., Dep't of Justice, Office of Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

The term "disability" as used in the ADA means:

(A)  a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B)  a record of such an impairment; or

(C)  being regarded as having such an impairment.

42 U.S.C. § 12102(1).   Similarly, the FHA defines handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment."  *Id.* at § 3602(h); 24 C.F.R. § 100.201.

Carrillo's motion for judgment on the pleadings argues that Plaintiffs' disability discrimination claim fails as a matter of law because Plaintiffs do not plead a qualifying disability, even after being given an opportunity to file a More Definite Statement.  Carrillo also argues that Plaintiffs fail to allege any act or omission by Carrillo with regard to the allegations of the failure to accommodate and disability discrimination.

The undersigned agrees that Plaintiffs' pleadings fail to identify the disability at issue. Plaintiffs' pleadings vaguely reference Mr. Payne's mental health and a "mental condition," but do not describe the nature of any mental disability or identify the disability beyond these general references.  (*See* First Am. Pet. [#12] at ¶¶ 72, 125.)

Plaintiffs' response to Carrillo's motion, however, references various exhibits, which Plaintiffs claim evidence the nature of Mr. Payne's mental disability and the nature of his requested accommodation.  (Resp. [#140], at 4–5.)  These exhibits were filed on March 20, 2020, as Plaintiffs' "proposed exhibits" and include letters from Mr. Payne's mental health providers regarding Mr. Payne's schizoaffective disorder and associated anxiety and paranoia, documentation of Mr. Payne's various accommodation requests based on that disorder, and the administrative documents associated with the denial of his most recent request—for free covered parking outside the front gate of the apartment building.[3]  (Exs. [#67].)  These exhibits also establish that Mr. Payne filed a complaint with the Texas Workforce Commission regarding the denial of the accommodation, but the complaint was denied.  (Ex. P-17(b) [#67] at 29.)  These documents and Plaintiffs' response to Carrillo's renewed 12(c) motion provide the Court for the

---

[3] These exhibits establish that Mr. Payne made several accommodation requests prior to his request for free covered parking, at least one of which was granted—the waiver of the pet deposit for an emotional support animal and a third lock on his door.  (*See generally* Exs. [#67].)

first time with specific factual allegations regarding Mr. Payne's alleged disability and the denial of his request for an accommodation that form part of the basis of this suit.

Carrillo filed a reply in support of her 12(c) motion [#145], in which she argues that the Court should not consider these exhibits, which are documents external to the pleadings that contain new factual allegations not included in Plaintiffs' Amended Petition or More Definite Statement.

Indeed, the general rule is that, in ruling on a motion to dismiss, a court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). It is also true that these documents were filed with the Court after the deadline to file motions to amend pleadings (February 18, 2020) and after the undersigned recommended denying Plaintiffs' motion for leave to file an amended complaint on March 12, 2020 [#60], which the District Court ultimately granted [#103].

However, these documents do not attempt to assert new causes of action or new parties. They simply flesh out the details of those claims already clearly asserted in Plaintiffs' live pleadings. Plaintiffs are *pro se* litigants, and the Court construes their filings liberally. Plaintiffs have alleged a claim of disability discrimination in their pleadings and the exhibits filed with the Court on March 20, 2020, as well as Plaintiffs' response to Carrillo's renewed 12(c) motion provide additional factual details regarding this claim that the Court will take into consideration in evaluating the legal plausibility of Plaintiffs' disability discrimination claim.

However, even if these documents could establish that Plaintiffs have pleaded that Mr. Payne was under a qualifying disability at the time of the relevant events of this case, they still

do not save Plaintiffs' disability discrimination claim from dismissal.  Plaintiffs have not alleged or cited to any facts supporting the allegation that Mr. Payne was denied benefits and services for which Carrillo herself was responsible or that Carrillo herself otherwise discriminated against Plaintiff because of his disability.  The only facts regarding Carrillo that Plaintiffs include in their response are that Carrillo allegedly sent Mr. Payne correspondence in November 2017 to attempt to mediate a disagreement between Mr. Payne and Sara Ortiz (Midcrown's Property Manager), but Carrillo canceled the appointment (Resp. [#140], at 5); that Carrillo had Ortiz "personally hand-deliver a request for more information" regarding Mr. Payne's accommodation request (*Id.* at 7); and that Ortiz and Carrillo conspired in the denial of the accommodation because Carrillo requested Mr. Payne call her (*Id.*).  These allegations, even construed liberally with the general allegation that Carrillo was responsible for Plaintiffs' allegedly discriminatory eviction, are not facts from which a factfinder could plausibly conclude that Carrillo had Mr. Payne evicted in retaliation for his request for covered parking.  Carrillo is entitled to dismissal of Plaintiffs' disability discrimination and failure to accommodate claims.

     iii.   <u>Civil Conspiracy</u>

Plaintiffs allege a conspiracy to violate their constitutional rights in violation of Section 1985.  42 U.S.C. § 1985(3).  A plaintiff suing under Section 1985 must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *Angel v. La Joya Indep. Sch. Dist.*, 717 Fed. App'x 372, 378–79 (5th Cir. 2017).

Qualified immunity is available as a defense to Section 1985, as it is to Section 1983, and Carrillo has also asserted it here.  *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir. 2004) (en banc); *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 556 (5th Cir. 1997).  "[T]here can only be a deprivation of rights of a plaintiff [under Section 1985] where the action of the defendants is otherwise illegal."  *McClellan v. Miss. Power & Light Co.*, 545 F.2d 919, 925 (5th Cir. 1977).   Again, Plaintiffs' response to Carrillo's motion fails to identify any clearly established violation of law by Carrillo.  Because Plaintiffs have failed to allege any act in furtherance of the alleged conspiracy to terminate his public housing benefits and evict him that is a clearly established violation of federal law, Carrillo is entitled to qualified immunity as to this claim as well.

There are also other defects related to Plaintiffs' Section 1985 claim.  For example, the Fifth Circuit has held that the only conspiracies actionable under Section 1985(3) are those motivated by racial animus.  *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019).  Plaintiffs have not alleged that the conspiracy to terminate their benefits in the instant case was racially motivated.  This claim therefore also fails as a matter of law.

iv.   Conspiracy to Violate the DTPA

Plaintiffs' final remaining claim against Carrillo is a conspiracy to violate the DTPA. The DTPA grants consumers a cause of action against "any person" for false, misleading, or deceptive acts or practices.  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see also* Tex. Bus. & Com Code Ann. § 17.50(a)(1) (allowing consumer to maintain a civil action against any "person" using or employing a false, misleading, or deceptive act or practice as defined by statute).  Plaintiffs contend that Carrillo made misrepresentations about Mr. Payne's Facebook post in violation of the DTPA.

This claim also fails as a matter of law, as the DTPA does not apply to the City or its subdivisions because they are not "persons" as defined by the Act. *City of Wylie v. Taylor*, 362 S.W.3d 855, 864 (Tex. App.—Dallas 2012, no pet.). The Court has already concluded that SAHA is not subject to the DTPA on this basis, and Plaintiffs allege that Carrillo acted at all times relevant to this suit in an official capacity as an agent of SAHA. (First Am. Pet. [#1-8] at ¶¶ 26.) Carrillo is therefore also entitled to dismissal of Plaintiffs' DTPA claim.

Additionally, under Texas law, official immunity inures to all government employees who perform discretionary duties in good faith and within their authority. *Crostley v. Lamar County, Tex.*, 717 F.3d 410, 424 (5th Cir. 2013); *DeWitt v. Harris County*, 904 S.W.2d 650, 652 (Tex. 1995). The elements of the defense of official immunity are "(1) the performance of discretionary duties (2) that are within the scope of the employees' authority, (3) provided that the employee acts in good faith." *Crostley*, 717 F.3d at 424 (quoting *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002)). "Texas law of official immunity is substantially the same as federal qualified immunity." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). "An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the facts justified his conduct." *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656–57 (Tex. 1994)). Like the federal standard from which it is derived, Texas's good-faith test is one of objective legal reasonableness. *Id.* The defendant claiming official immunity bears the burden of proving all elements of the defense. *Chambers*, 883 S.W.2d at 653. To survive a motion to dismiss, however, a plaintiff must merely plead specific facts, that, if proved, would overcome an official's immunity defense. *Murray v. Earle*, 334 Fed. App'x 602, 608 (5th Cir. 2009).

As previously discussed, the pleadings allege that Carrillo reported a threat of violence by Mr. Payne on social media to her superiors.  The Court finds that the Facebook post by Mr. Payne, as described by Plaintiffs themselves in their pleadings, forecloses any plausible theory of bad faith on her part.  The Court should therefore dismiss Plaintiffs' DTPA claim against Carrillo.

### III.  Midcrown's Motion to Dismiss

Midcrown's pending motion to dismiss under Rule 12(b)(6) is the first motion to dismiss filed by this Defendant.  Plaintiffs object to the Court considering Midcrown's motion to dismiss, on the basis that it was filed almost a year after the expiration of the dispositive motions deadline set by the Scheduling Order in this case.  Plaintiffs argue that Midcrown has not shown good cause for its failure to meet the Scheduling Order deadline under Rule 16(b) of the Federal Rules of Civil Procedure and that, despite its diligence, it could not have reasonably done so.  (*See* Advisory [#139].)

The Court agrees with Plaintiffs that this case's unusual procedural history has caused significant delay in the adjudication of the preliminary motions to dismiss addressing threshold pleading issues that have been filed in this case.  Although SAHA and Carrillo filed their original motions to dismiss immediately after removal in April of 2019, over two years ago, the District Court did not adopt the undersigned's report and recommendation on these motions until March 6, 2020.  The original Scheduling Order in this case set a dispositive motions deadline of July 17, 2020, but the second round of dispositive motions in this case were not resolved until March 30, 2021, at which time Carrillo was ordered to file a renewed 12(c) motion.  During the pendency of these motions, Plaintiffs presented the Court with numerous filings, including the filing of three attempted interlocutory appeals, all of which were dismissed for lack of

jurisdiction.  The Court acknowledges Plaintiffs' frustration with the delay associated with this case but Plaintiffs themselves are partly responsible for prolonging of the resolution of this matter.

Plaintiffs are correct that Midcrown filed its motion outside of the deadlines set forth in the Scheduling Order.  Midcrown's motion to dismiss was filed on April 13, 2021, nearly one year after the expiration of the dispositive motions deadline set by the Scheduling Order. However, Midcrown did so in response to an Order by the Court for Carrillo to file a renewed motion for judgment on the pleadings or motion for summary judgment (to correct previous issues with service of the motion) and for Midcrown to raise any threshold issues regarding pleading with the filing of its own motion.  By doing so, the Court *sua sponte* extended the Scheduling Order as to the remaining two Defendants for the limited purpose of addressing these motions.  The Court did not extend the deadline based on Rule 16 and any good cause showing on the part of Midcrown.  Rather, the Court, after finding pleading deficiencies with respect to all of Plaintiffs' claims as to all the other Defendants in this case, gave Plaintiffs the opportunity to demonstrate why their claims should not also be dismissed against Midcrown and gave Midcrown the opportunity to articulate any additional reasons for their dismissal particular to this Defendant.  By doing so, the Court provided Plaintiffs with the opportunity to save their claims from dismissal as to the last remaining Defendant.  Midcrown's motion was therefore timely filed and the Court will consider both the motion and Plaintiffs' arguments, rather than summarily dismissing Plaintiffs' claims against Midcrown for the reasons already stated in the previous reports and recommendations and herein as to Carrillo.

**A.      Legal Standard**

As described *supra*, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Furthermore, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Const. Co.*, 369 F.3d at 467.  However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim*, 836 F.3d at 469 (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *Twombly*, 550 U.S. at 570.

**B.      Facts Alleged Against Midcrown**

Plaintiffs' First Amended Petition has few references to Midcrown, which is what prompted the Court to order a More Definite Statement to clarify whether Midcrown was even a Defendant in this action.  In the Petition, the facts specifically alleged against Midcrown include only the following:  Plaintiffs claim that they entered into a lease with Midcrown for an apartment pursuant to a contract between SAHA and Midcrown to provided subsidized housing to San Antonio residents, such that a joint venture existed between the two; that management of

Midcrown alerted SAHA to Mr. Payne's Facebook posting at issue; and that Midcrown is liable for negligence due to the injuries Plaintiffs suffered "as a result of defects in the real property." (First Am. Pet. [#1-8] at ¶¶ 38, 160, 197, 211 213.)

According to Plaintiffs' More Definite Statement, Midcrown subjected Mr. Payne to disability discrimination when Midcrown's Property Manager Sara Ortiz denied Mr. Payne's request for accommodation on November 15, 2017.  (More Definite Statement [#29] at 5.) Plaintiffs further allege that on November 25, December 5, and December 7, 2017, Ms. Ortiz failed to properly handle Mr. Payne's requests for reasonable accommodation in public housing by delaying the processing of the requests, failing to document or respond to requests, and requiring Mr. Payne to re-submit documents in support of his requests.  (*Id.*)

There are no other specific allegations in Plaintiffs' pleadings against Midcrown, and the Amended Petition, in advancing specific legal causes of action against Defendants, focuses on the acts of SAHA, Carrillo, and at times "their agents" (Ms. Ortiz—Midcrown's Property Manager—and Leticia Clark—a SAHA agent).

**C.    Analysis**

Again, this Court has construed Plaintiffs' pleadings as asserting the following causes of action: (1) wrongful eviction/unlawful search and seizure pursuant to Section 1983; (2) due process violation pursuant to Section 1983; (3) disability discrimination and failure to accommodate; (4) intentional infliction of emotional distress; (5) civil conspiracy pursuant to 42 U.S.C. § 1985; (6) violation of Section 1986; (7) conspiracy to violate the Texas Deceptive Trade Practices Act ("DTPA"); and (8) negligence.  Construing Plaintiffs' pleadings liberally, the only cause of action with specific facts focusing on Midcrown is Plaintiffs' claim of disability discrimination and failure to accommodate.

       i.      <u>Plaintiffs fail to plead a claim of disability discrimination or retaliation.</u>

Midcrown argues that this claim must be dismissed because Plaintiff has failed to plead a qualifying disability under the Fair Housing Act or any statute prohibiting disability discrimination.   Again, the Fair Housing Act defines handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201.   The ADA also defines disability as substantially impairing one of a set of specified "major life activities."   42 U.S.C. § 12102(1).   Midcrown argues that Plaintiffs' allegations that Mr. Payne suffers from a "mental impairment" are insufficient to establish that this impairment substantially limits one of his major life activities. The Court agrees.

As discussed with respect to Carrillo, even if the Court were to consider Plaintiffs' proposed exhibits describing his mental impairment, Mr. Payne has not provided the Court with any allegations that explain how his schizoaffective disorder substantially impairs one of Mr. Payne's major life activities, only that he suffers from such a disorder and that it involves anxiety and paranoia.   *See Houston v. DTN Operating Co., LLC*, No. 4:17-CV-00035, 2018 WL 4653246, at \*3–4 (E.D. Tex. Oct. 17, 2017) (dismissing claim of disability discrimination by public housing tenant for failure to plead any facts beyond a diagnosis of mental impairment that could allow the court to determine how this condition "substantially limits" a major life activity). Plaintiffs have provided the Court with no medical facts to support their claim that Mr. Payne is disabled under the Fair Housing Act or the ADA.

Furthermore, even if Plaintiffs were to establish that Mr. Payne's mental impairment renders him disabled under these Acts, Plaintiffs fail to plead how Midcrown's denial of Mr.

Payne's request for free covered parking constitutes discrimination on account of his disability. Plaintiffs' response to Carrillo's motion [#144] does not respond to Midcrown's argument regarding their failure to plead disability discrimination and a failure to accommodate. Plaintiffs' proposed exhibits addressed with respect to Carrillo's 12(c) motion [#67], however, indicate that Mr. Payne and his doctors believed that he needed parking close to the front of the apartment building because of paranoia related to recent burglaries in the building and neighborhood. Even so, Plaintiffs have still not alleged any facts as to how refusing to waive the fee for covered parking constitutes discrimination against Mr. Payne on account of his alleged disability.

Finally, insofar as Plaintiffs are arguing that Midcrown unlawfully retaliated against Mr. Payne for requesting accommodation for an alleged disability by evicting him, this claim also fails as a matter of law. Retaliation claims brought under the Fair Housing Act are analyzed under the same standard that are applied to retaliation claims brought under Title VII and other employment discrimination statutes. *Chavez v. Aber*, 122 F. Supp. 3d 581, 599 (W.D. Tex. 2015) (citing *Caractor v. Town of Hempstead*, 159 F.3d 1345, 1998 WL 536385, at *2 (2d Cir. June 11, 1998)). Accordingly, to state a claim for retaliation, a plaintiff must demonstrate that (1) he engaged in an activity that the Fair Housing Act protects; (2) he was subjected to an adverse action by the defendant; and (3) a causal connection exists between the protected activity and the adverse action. *Id.* A request for accommodation for persons suffering from a disability is a protected activity under the Fair Housing Act. *Id.* at 299–300.

Once a plaintiff has made out a prima facie case of retaliation, the burden shifts to the defendant to state a legitimate, non-retaliatory reason for its decision. *Campos v. HMK Mortg.*, LLC, 458 F. Supp. 3d 517, 531 (N.D. Tex. 2020) (applying Title VII retaliation framework to

Fair Housing Act claim).  After the defendant states its non-retaliatory reason, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is actually a pretext for retaliation.  *Id.*

Plaintiffs' pleadings do not contain any allegations of direct evidence of retaliation in this case.  The only plausible causal connection between Mr. Payne's request for an accommodation and his eviction is a temporal one.  Plaintiffs' proposed exhibits indicate that Mr. Payne requested the accommodation at issue in November 2017, was served with a notice to vacate in March 2018, then evicted in April 2018.  (Ex. P-3 [#67], at 11; Ex. P-17(a) [#67], at 30.)  Yet Midcrown has come forth with a legitimate, non-retaliatory reason for Plaintiffs' eviction—Mr. Payne's threatening Facebook post, which occurred in the period of time after his request for accommodation and before his eviction.  (First Am. Pet. [#1-8] at ¶¶ 160, 186.)  Plaintiffs have failed to allege any facts from which a reasonable factfinder could plausibly conclude that Midcrown's stated reason was pretext for retaliation on account of Mr. Payne's alleged disability.

Nor can Plaintiffs state a claim for retaliation under the Texas Property Code.  The Texas Property Code provides that an eviction or lease termination does not constitute retaliation where "the tenant . . . threatens the personal safety of the landlord, the landlord's employees, or another tenant."  Tex. Prop. Code § 92.332(b)(2).  By Plaintiffs' own allegations, Mr. Payne posted a social media posting of himself holding weapons and ammunition making threatening statements towards Government officials.  (First Am. Pet. [#1-8] at ¶¶ 160, 186.)  Plaintiffs cannot advance a claim of retaliation under the Texas Property Code.

ii.   Plaintiffs fail to plead any other claims against Midcrown.

Having surveyed the other causes of action contained in Plaintiffs' Amended Petition, the undersigned finds that Plaintiffs fail to plead any other claims against Midcrown. Their Section 1983 claims fail as a matter of law because only "state actors" may be sued for federal civil rights violations under 42 U.S.C. § 1983. A private entity, like Midcrown, becomes a "state actor" only when her conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Aside from generalized allegations that Midcrown and SAHA worked together to provide affordable housing to tenants like Plaintiffs, Plaintiffs have not alleged facts that establish that the Court should attribute Midcrown's conduct to the State of Texas. And if the Court did, Plaintiffs' Section 1983, as well as their Section 1985, claims would fail for the same reasons they fail against SAHA and Carrillo.

The Court should also dismiss Plaintiffs' tort claims of intentional infliction of emotional distress and negligence. To recover on such a claim, Plaintiffs would have to prove that Midcrown engaged in conduct so extreme and outrageous as to go "beyond all possible bounds of decency" and that a civilized community would regard the conduct as "atrocious and utterly intolerable." *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Whether a defendant's conduct rises to this level is a question of law. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). "An eviction is an unpleasant legal proceeding for both landlord and tenant, but generally, action taken pursuant to a lease contract does not rise to the level of outrageous conduct necessary to satisfy this element of intentional infliction of emotional distress." *Straus v. Kirby Ct. Corp.*, 909 S.W.2d 105, 109 (Tex. App.—Houston [14th Dist.] 1995, writ denied). Plaintiffs have not alleged any facts that suggest Midcrown handled their eviction in a way that

would place it within the category of extreme conduct covered by the tort of intentional infliction of emotional distress.

Furthermore, the undersigned does not construe Plaintiffs' pleadings as alleging any Section 1986 or DTPA claims against Midcrown, as those allegations focus on the City of San Antonio and SAHA/Carrillo, respectively.  The nature of Plaintiffs' final cause of action—negligence—is unclear, as there are no factual allegations regarding what legal duty Midcrown breached in denying Mr. Payne's request for an accommodation and evicting him.

Finally, both Midcrown and Plaintiffs discuss claims of breach of contract and of the covenant of quiet enjoyment in their motion and response.  These are two of the claims that Plaintiffs attempted to add in their proposed amended complaint that the Court declined to permit [#60].  Accordingly, the undersigned does not construe these claims as being before the Court in any live pleading.  Plaintiffs may pursue these claims through a separate lawsuit in state court.

## IV.  Conclusion and Recommendation

Having considered the motions before the Court, the responses and replies thereto, and the governing law, the undersigned recommends that Defendant Amy V. Carrillo's First Amended and Renewed 12(c) Motion for Judgment on the Pleadings [#136] and Defendant Midcrown Senior Pavilion, LP's Motion to Dismiss for Failure to State a Claim [#138] be **GRANTED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 26th day of August, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE